## Mutual Trust and Deposit Company, Guardian v. Travelers Protective Association.

[No. 7,760. Filed April 9, 1914. Rehearing denied July 2, 1914. Petition to transfer dismissed December 11, 1914.]

1. Insurance.—*Action on Policy.—Complaint.—Harmless Error.*— In an action on a benefit certificate, where one paragraph of the complaint alleged that plaintiff and insured had duly performed all the conditions on their part, that defendant had been duly notified and furnished with proof of death of the insured, as required by defendant's constitution and by-laws, and that payment had been refused and liability denied by defendant, plaintiff was not harmed by the striking out of another paragraph which alleged that notice and proof of death had been received and accepted without objection and retained by defendant until a certain date when the proof was rejected and payment was refused, and that defendant's agent, who had ascertained the circumstances of the death, denied the liability of defendant, since proof of the matters alleged was admissible under the paragraph remaining. pp. 332, 334.

330    APPELLATE COURT OF INDIANA,

Mutual Trust, etc., Co. *v.* Travelers Protect. Assn.—57 Ind. App. 329.

2.  INSURANCE.—*Life Insurance.—Proofs of Death.—Waiver.—*The rejection of proofs of death tendered after the expiration of the time allowed for making the same, will not of itself show a waiver of proofs by the company, but an absolute denial of liability on other grounds within the time allowed for making proofs is a waiver thereof. pp. 333, 334.

3.  INSURANCE. — *Action on Policy. — Complaint. — Sufficiency.* — A paragraph of complaint on a benefit certificate, alleging generally compliance with the provisions as to proof of death and all other conditions necessary to recovery, was sufficient, though allegations with reference to the rejection of the proofs by defendant were in themselves insufficient to show a waiver of such proofs. p. 333.

4.  APPEAL.—*Verdict.—Answers to Interrogatories.—Scope of Review.—*In determining the question presented on the ruling on a motion for judgment on answers to interrogatories, the court can only consider the issues made by the pleadings, the general verdict, and the interrogatories and answers thereto, in the light of any evidence that might properly have been admitted under the issues, and must indulge all reasonable presumptions in aid of the general verdict. p. 335.

5.  TRIAL.—*Verdict.—Answers to Interrogatories.—*A general verdict is not controlled by answers to interrogatories that may be harmonized with it by any evidence admissible under the issues, nor by answers that are inconsistent or contradictory of each other. p. 335.

6.  INSURANCE.—*Action.—Loss Within Warranty or Exception.—Pleading.—*That a loss was within a warranty or an exception shown by the policy, is a matter of defense which ordinarly must be pleaded affirmatively, but where a policy provided that defendant should not be liable for injuries in the absence of visible marks upon the body, and the complaint in an action thereon averred that insured's death was the result of an accident which produced visible marks upon his body, the question of the existence of such marks was within the issue formed by the general denial. p. 335.

7.  INSURANCE.—*Action on Policy.—Verdict.—Answers to Interrogatories.—*In an action on a policy providing that the company should not be liable for death from injuries of which there was no visible mark upon the body of insured, answers by the jury to interrogatories showing that insured's death was caused by dislocation of the neck and that there were no visible marks of the injury on the body at the time of death, or thereafter, were not in irreconcilable conflict with a verdict for plaintiff, in view of the fact that it might have been shown under the issues that there were visible marks which had disappeared before death. pp. 336, 337.

NOVEMBER TERM, 1914. 331

Mutual Trust, etc., Co. *v.* Travelers Protect. Assn.—57 Ind. App. 329.

8. EVIDENCE.—*Judicial Notice.*—The court can not take judicial knowledge of the length of time a person may live with a dislocated neck, nor, from the absence of visible marks of such injury at the time of death, or thereafter, that there were no such marks prior to death. p. 337.

9. INSURANCE.—*Accident Insurance.*—*Exceptions in Policy.*—*Construction.*—*"Visible".*—A provision in a policy exempting the company from liability where there is no visible mark of injury on the body of insured, is for the protection of the insurer against fraudulent claims, and is to be reasonably construed so as to effectuate the intention of the parties as shown by the whole instrument, so that under such a provision there can be no escape from liability where insured's death was caused by dislocation of the neck, and the cause was ascertainable by examination, though not observable upon the surface of the body, since the term "visible" is used in the broad sense of perceptible, discernible, clear, distinct and evident. pp. 338, 341.

10. INSURANCE.—*Exceptions in Policy.*—*Construction.*—Words of exception in an insurance contract are to be construed most strongly against the party for whose benefit they are inserted. p. 339.

11. EVIDENCE.—*Judicial Notice.*—The court can not declare as a matter of law that a dislocated neck will in every instance cause a visible mark of injury within the meaning of a contract of insurance exempting the insurer from liability in the absence of visible marks of injury upon the body of the insured. p. 341.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Action by The Mutual Trust and Deposit Company, as guardian of Carl F. Martin, against the Travelers Protective Association of America. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*George H. Hester* and *Stannard & Howard,* for appellant. *John B. Elam, James W. Fesler, Harvey J. Elam, Charles L. Jewett* and *Henry E. Jewett,* for appellee.

FELT, J.—This is a suit on a benefit certificate issued by appellee to Charles W. Martin, in which, in case of death from accident within the provisions thereof, appellee agreed to pay the beneficiary thereof the sum of $5,000. Carl F. Martin was the minor son, and by reason of the death of his mother, prior to that of his father, became the sole bene-

332    APPELLATE COURT OF INDIANA,

Mutual Trust, etc., Co. *v.* Travelers Protect. Assn.—57 Ind. App. 329.

ficiary of Charles W. Martin. The issues were joined upon one paragraph of amended complaint, and a general denial filed thereto by appellee. The cause was tried by a jury, and a verdict rendered for appellant. Upon answers to interrogatories returned by the jury, the court rendered judgment for appellee.

The errors assigned are: (1) sustaining appellee's motion to strike out the additional fourth paragraph of appellant's complaint. (2) The error of the court in rendering judgment for appellee against appellant on the answers to the interrogatories notwithstanding the general verdict.

The fourth paragraph was stricken out on the ground that all the material averments contained therein could be proven under the allegations of the amended first paragraph of the complaint. It is insisted by appellant that there are vital differences between the facts averred in the amended first paragraph of the complaint, and the fourth paragraph of the complaint stricken from the record. The difference pointed out in the paragraphs of complaint as contended by appellant is not material. In the first amended paragraph it was alleged "that said Carl F. Martin and this plaintiff have also each duly performed all the conditions thereof on their part to be performed; that on the 16th day of January, 1909, and within the time prescribed by the constitution, by-laws and rules of said defendant order, said plaintiff and the said Carl F. Martin duly notified said defendant of the death of said Charles W. Martin, and made to said defendant, as required by its said constitution, by-laws and rules due proof of the death of said decedent, and demanded of it the payment of the amount due on the said certificate and policy; that said defendant then and there denied and still denies all liability on said certificate and policy, and refused and still refuses to pay the same or any part thereof." In the fourth paragraph the manner and form in which the proofs were made is specifically set out, with this additional allegation: "Plaintiff further says that

said notices and proofs of the death of said Martin were received by said defendant at its principal office in the city of St. Louis * * *; that said defendant accepted said proofs, and raised no objection whatever to the contents thereof, and demanded no further proofs at any time thereafter; that said defendant retained said proofs, notices and affidavits until the —— day of March, 1909, * * * at which time the said defendant rejected said proofs and refused and declined to pay said claim or any part thereof * * *; that the said agent of said defendant during the month of February, 1909, after having ascertained the facts and circumstances of the death of said Martin for and on behalf of defendant thereupon denied the liability of said defendant on account of said benefit certificate for the reason as assigned by him that said Martin had committed suicide.''

Each of said paragraphs avers that the insured died December 18, 1908, and by exhibit the constitution and by-laws of appellee are made part of each of said paragraphs. Section 7 of article 9 of the constitution provides that proofs of death must be made within sixty days after death occurs. The paragraph stricken out avers that the proofs were rejected in March, 1909, which must have been more than sixty days after the death of the insured. This being the case, the fourth paragraph of the complaint does not state facts sufficient to show a waiver of proofs within the time allowed for making proof of death, and without some affirmative act approving the proofs submitted, or expressly waiving proof, a rejection of the proofs tendered after the expiration of the time allowed for making the same, is not of itself sufficient to show a waiver of the proofs on the part of the company, though an absolute denial of liability on other grounds within the time allowed for making proofs has been held to constitute a waiver of proofs. *Aetna Life Ins. Co.* v. *Fitzgerald* (1905), 165 Ind. 317, 323, 75 N. E. 262, 1 L. R. A. (N. S.) 422, 112 Am. St.

232, 6 Ann. Cas. 551; *Fidelity Casualty Co.* v. *Sanders* (1904), 32 Ind. App. 448, 454, 70 N. E. 167; *Germania Fire Ins. Co.* v. *Pitcher* (1903), 160 Ind. 392, 398-402, 64 N. E. 921, 66 N. E. 1003. The paragraph was good for the same reasons that the amended paragraph was sufficient, viz., the averment of compliance with the provisions as to proof of death and all other conditions necessary to a recovery.

It is not controverted that if the material facts averred in the fourth paragraph of the complaint could be proven under the averments of the amended paragraph, no error was committed in striking the fourth paragraph from the files. *Brown* v. *College Corner, etc., Road Co.* (1877), 56 Ind. 110; *Faylor* v. *Brice* (1893), 7 Ind. App. 551, 34 N. E. 833; *Levi* v. *Drudge* (1894), 139 Ind. 458, 39 N. E. 45. As this court views the matter the paragraphs are substantially alike and every material charge contained in the fourth paragraph can be proven under the allegations of the amended first paragraph. The claim was not rejected upon the ground that the proofs were in any manner deficient. That question was therefore waived, and was not at issue. *Germania Fire Ins. Co.* v. *Pitcher, supra;* 2 May, Insurance §§468, 469; *Little* v. *Phoenix Ins. Co.* (1877), 123 Mass. 380; *Graves* v. *Washington Marine Ins. Co.* (1866), 94 Mass. 391; *Pennsylvania Fire Ins. Co.* v. *Kittle* (1878), 39 Mich. 51.

The next error assigned and discussed by both appellant and appellee is that the court erred in sustaining appellee's motion for judgment on the answers to the interrogatories notwithstanding the general verdict. The policy contains the following provisions:

"The member hereby agrees that the following rules shall be observed: that the Traveler's Protective Association of America shall not be liable * * * in case of * * * injuries of which there is no visible mark upon the body (the body itself not being deemed such a mark in case of death)."

The interrogatories and the answers thereto are as fol-

lows:  "(1) Did Charles W. Martin, named in plaintiff's complaint die December 18th, 1908? (Ans.) Yes. (2) Was the death of said Martin caused by his neck being broken? (Ans.) No. (3) Was the death of said Martin caused by strychnine poisoning? (Ans.) No. (4) What was the cause of said Martin's death? (Ans.) Dislocation of the neck. (5) Was there any visible mark of injury upon the body of Charles W. Martin at the time of his death? (Ans.) No. (6) Was there any visible mark of injury upon the body of Charles W. Martin after his death? (Ans.) No."

The rule is firmly established that in passing on a motion for a judgment on the answers to the interrogatories notwithstanding the general verdict, the court can only consider the issues made by the pleadings, the general verdict, the interrogatories and the answers thereto. Questions relating to the instructions tendered, given or refused, or to evidence actually given or excluded, can not be considered, but the question will be determined in the light of any evidence that might properly have been received under the issues. Every reasonable presumption is indulged in favor of the general verdict and under the foregoing rule, the answers will not be held to be in irreconcilable conflict with the general verdict if they may be harmonized and made consistent with it by any evidence possible under the issues. If the answers are inconsistent or contradictory they nullify each other and do not control or in any way affect the general verdict. *Cleveland, etc., R. Co.* v. *Federle* (1912), 50 Ind. App. 147, 152, 98 N. E. 123; *Inland Steel Co.* v. *Smith* (1907), 168 Ind. 245, 249, 80 N. E. 538; *Bemis Indianapolis Bag Co.* v. *Krentler* (1907), 167 Ind. 653, 655, 79 N. E. 974.

The case was tried on a single paragraph of complaint and an answer of general denial. In passing on the motion for a judgment on the answers of the jury to the interrogatories we can not go outside the issues made by the general denial. Appellant contends that un-

der the issues formed, the question of visible marks is not presented. The defense depends on the provision of the policy which excepts from the liability of appellee ''injuries of which there is no visible mark upon the body''. If the loss is within a warranty or an exception shown by the policy, it is a matter of defense, which must be pleaded affirmatively by the defendant, and is not available as a defense under the general denial unless the complaint contains special averments which put such matters in issue. *Modern Woodmen* v. *Noyes* (1902), 158 Ind. 503, 507, 64 N. E. 21; *Phenix Ins. Co.* v. *Pickel* (1889), 119 Ind. 155, 158, 21 N. E. 546, 12 Am. St. 393; *Louisville Underwriters* v. *Durland* (1890), 123 Ind. 544, 547, 24 N. E. 221, 27 L. R. A. 399; *United States Casualty Co.* v. *Hanson* (1905), 20 Colo. App. 393, 79 Pac. 176. In this case the complaint avers that the insured came to his death as a result of an accident which produced on the body visible marks other than the body itself. While the averment in regard to visible marks on the body was not essential to a good complaint, the appellant having specially pleaded the fact to show that the company was not saved from liability by the exception, it can not now be heard to say that the question of visible marks upon the body was not an issuable fact under the issue formed by the general denial. *Lake Erie, etc., R. Co.* v. *Holland* (1904), 162 Ind. 406, 414, 69 N. E. 138, 63 L. R. A. 948; *Cleveland, etc., R. Co.* v. *Moore* (1908), 170 Ind. 328, 353, 82 N. E. 52, 84 N. E. 540; *Nixon* v. *Beard* (1887), 111 Ind. 137, 141, 12 N. E. 131; *Miller* v. *Taggart* (1905), 36 Ind. App. 595, 599, 76 N. E. 321; *Eldridge* v. *Pierce* (1878), 90 Ill. 474, 479; *Hall* v. *Fullerton* (1873), 69 Ill. 448, 451.

Are the answers to the interrogatories in irreconcilable conflict with the general verdict? The answer to the fourth interrogatory establishes the fact that the neck of decedent was dislocated and the dislocation was the cause of his death. The answers to interrogatories Nos. 5 and 6 show that there was no visible mark on the body

at the time of the death or after the death of the insured. It is not shown by the answers to the interrogatories how long the insured lived after his neck was dislocated, nor is it shown that between the time when his neck was dislocated and the time when death occurred, there were no visible marks of injury on the body. It is a matter of common knowledge that the parts of a dislocated neck might be in such unnatural position as to afford visible evidence of the dislocation, and that there might also be discoloration or other evidence of an injury upon the outer parts of the neck visible for a time, and which from treatment or by the efforts of nature to restore normal conditions might disappear and be entirely absent at the time of, or after death. It is entirely possible that the protruding or uneven portions of a dislocated neck might be so adjusted and restored to natural position as to leave no external, visible marks of the dislocation, though prior to such adjustment there were visible marks of the injury on the body evidenced by the maladjustment of the parts of the dislocated neck. Evidence was admissible under the issues to prove facts of the character above indicated. This court can not take judicial knowledge of the length of time a person may live with a dislocated neck, nor can it say that because there were no visible marks upon the body at the time of death, or after death, that there were no such marks of injury on the body prior to the death of the injured person. Viewed in this light, it is apparent that the answers to interrogatories Nos. 5 and 6 come short of showing that there was at no time after the dislocation and before the death any visible mark of injury on the body of the decedent. *Rhodius* v. *Johnson* (1900), 24 Ind. App. 401, 405, 56 N. E. 942; *Boyer* v. *Indianapolis, etc., Traction Co.* (1910), 45 Ind. App. 683, 686, 90 N. E. 478. If there were visible marks on the body at the time of, or shortly after, the injury, the fact that they may have been obliterated before the death of

the insured is immaterial. *Bernays* v. *United States Mut. Acc. Assn.* (1891), 45 Fed. 455, 457; 4 Cooley, Briefs on Ins. 3185. In Fuller, Accident and Liability Ins. 123, it is said: "The company will be liable where there are visible marks of injury when the accident happens, though they may later become obliterated. It is not necessary that they should in any sense be permanent." We therefore hold that the answers to the interrogatories are not in irreconcilable conflict with the general verdict and that it was error to sustain a motion for judgment on the interrogatories notwithstanding the general verdict.

Other questions are presented and because the foregoing conclusion necessitates a reversal of the judgment, we give them consideration. It is contended by appellant that the answer to interrogatory No. 4 showing that the cause of death of the insured was "dislocation of the neck", enables the court to declare as a matter of law that there was on the body of decedent "a visible mark" of injury within the meaning of the insurance contract. If this can be done the answers to interrogatories Nos. 5 and 6 are contradicted and nullified by the answer to No. 4, and under a well established rule would not affect the general verdict. Some questions in a sense preliminary to a determination of the effect of said answers are involved and will be considered. It is apparent that in answering that there were no visible marks of injury on the body at the time of, or after death, that the jury used the phrase "visible marks" in the ordinary and limited sense of surface indications readily apparent to the eye unaided by any other means of discernment of the marks of injury. *Lewis* v. *Brotherhood Acc. Co.* (1907), 194 Mass. 1, 79 N. E. 802, 17 L. R. A. (N. S.) 714, 717; Fuller, Accident and Liability Ins. 126.

It has been held that a condition in an accident policy exempting the company from liability where there is 9. no visible mark of injury on the body is intended to protect the insurer against fraudulent claims or fic-

titious accidents and should receive a reasonable, liberal and practical construction that will carry into effect the intention of the contracting parties as evidenced by the whole instrument. Also that words of exception in an insurance contract are to be construed most strongly against the party for whose benefit they are inserted. *United States Mut. Acc. Assn.* v. *Newman* (1887), 84 Va. 52, 59, 3 S. E. 805; *Gale* v. *Mutual Aid, etc., Assn.* (1893), 66 Hun 600, 602, 21 N. Y. Supp. 893; *Menneilley* v. *Employers' Liability Assur. Co.* (1896), 148 N. Y. 596, 602, 43 N. E. 54, 31 L. R. A. 686, 688, 51 Am. St. 716; *Union Casualty, etc., Co.* v. *Mondy* (1903), 18 Colo. App. 395, 71 Pac. 677; *United States Mut. Acc. Assn.* v. *Barry* (1889), 131 U. S. 100, 111, 9 Sup. Ct. 755, 33 L. Ed. 60; *Moulor* v. *American Life Ins. Co.* (1884), 111 U. S. 335, 342, 343, 4 Sup. Ct. 466, 28 L. Ed. 447; *Palmer* v. *Warren Ins. Co.* (1840), 1 Story 360, 364; 1 May, Insurance (4th ed.) §§172, 175. In *Palmer* v. *Warren Ins. Co., supra,* 364, Story, J., said: "I take the rule to be clearly established, as a general rule, that words of exception in any instrument are to be construed most strongly against the party, for whose benefit they are introduced; and this rule has been expressly applied to words of exception in policies of insurance, as well in England, as in this court. * * * Now, for whose benefit are those words introduced? Clearly for the benefit of the underwriters, as they are to relieve them from risks, for which they would otherwise be liable under the general words of the policy. They are not, in form, or in substance, the words of the insured; but words of exception, used by the underwriters, to exempt them from a liability from the general rule, which would otherwise attach upon them during the whole term of time, for which the policy was to endure."

In 1 May, Insurance (4th ed.) §175, it is said: "No rule, in the interpretation of the policy, is more fully established or more imperative and controlling, than that which declares that, in all cases, it must be liberally construed in fa-

340    APPELLATE COURT OF INDIANA,

Mutual Trust, etc., Co. *v.* Travelers Protect. Assn.—57 Ind. App. 329.

vor of the insured, so as not to defeat without a plain nec-
essity his claim to the indemnity, which in making the in-
surance, it was his object to secure. When the words are,
without violence, susceptible of two interpretations, that
which will sustain his claim and cover the loss must, in pref-
erence, be adopted. While courts will extend all reasonable
protection to the insurers by allowing them to hedge them-
selves about by conditions intended to guard against fraud,
carelessness, want of interest, and the like, they will never-
theless enforce the salutary rule of construction, that as the
language of the conditions is theirs, and it is therefore in
their power to provide for every proper case, it is to be
construed most favorably to the insured." In Fuller, Ac-
cident and Liability Ins. 121-123 it is said: "Some policies
provide that the insurer will not be liable for injuries or
death of which there is no visible mark on the body; the
body itself in case of death not being deemed such a mark.
A provision of this nature will not be enforced by the courts,
where it is manifest that the death has been accidentally
caused and where to give literal effect to the clause would
avoid the policy. The courts are not disposed to pay much
respect to the provisions of a policy which purport to con-
trol the laws of evidence. It is a fundamental rule that par-
ties may contract freely in relation to conditions precedent
to liability, or in relation to anything going to the remedy;
but the courts will rigidly scrutinize any limitations placed
upon the rights of recovery itself. * * * The widest
latitude has been given in defining what constitutes an ex-
ternal or visible sign of injury." The underlying principle
involved in the foregoing rules of construction has been
adopted and applied in the State in several decisions.
*Metropolitan Life Ins. Co.* v. *Johnson* (1912), 49 Ind. App.
233, 242, 94 N. E. 785, and cases cited; *Glens Falls Ins. Co.*
v. *Michael* (1907), 167 Ind. 659, 666, 74 N. E. 964, 79 N. E.
905, 8 L. R. A. (N. S.) 708.

The certificate of membership issued to decedent provides

that the benefits in case of death shall be paid to Mary Grace Martin, wife of the insured, and further provides that "$5,000 shall be paid to the beneficiary named in the certificate of any deceased member in case of death by accident." The policy was intended to provide indemnity for death by accident and is not reasonably subject to any other interpretation. The clause excepting the insurer from liability in the absence of visible marks on the body, is clearly an exception in favor of the insurer. If given a strict and literal interpretation it would limit and control the evidence by which death by accident might otherwise be proven. Courts have generally refused to enforce literally provisions which seek to limit or control the rules of evidence. If from legitimate evidence it is manifest that the death of the insured resulted from accidental causes covered by the policy, the courts will not adhere to strict and literal interpretation of such provisions in an insurance contract in order to avoid the policy. However, as the question arises here on the answers of the jury to the interrogatories, to hold that the answer to interrogatory No. 4 enables us to declare as a matter of law that there was a "visible mark" on the body of decedent, would amount to a holding that in every case of death from dislocation of the neck, without other facts or evidence to assist the understanding, the court should declare as a matter of law that such dislocation is a "visible mark" upon the body, within the meaning of insurance contracts like the one now under consideration. The court can not declare as a matter of law, from this fact alone, in the absence of other facts, in some way showing that it was a "visible mark", that a dislocated neck is always a visible mark of injury within the meaning of the contract.

While we have reached this conclusion, we adhere to the liberal rule of construction in favor of the enforcement of insurance contracts, above indicated, and recognize that the weight of authority is to the effect

that such contracts of indemnity will not be defeated by such exceptions where there is evidence, which under such rule of construction, shows a reasonable and substantial compliance with the provisions of the insurance contract. *Union Casualty, etc., Co.* v. *Mondy, supra; United States Casualty Co.* v. *Hanson, supra; Gale* v. *Mutual Aid, etc., Assn., supra,* 601; *Royal Casualty Co.* v. *Nelson* (1914), 153 S. W. 674, 676; *Wehle* v. *United States Mut. Acc. Assn.* (1895), 31 N. Y. Supp. 865, 11 Misc. 36; *Lewis* v. *Brotherhood Acc. Co., supra; Menneilley* v. *Employers' Liability Assur. Co., supra;* 4 Cooley, Briefs on Ins. 3184 *et seq; United States Mutual Acc. Assn.* v. *Barry, supra,* 111; *Goodes* v. *Order of United Commercial Travelers* (1913), 156 S. W. (Mo.) 995, 1001; *Thompson* v. *Loyal Protective Assn.* (1911), 167 Mich. 31, 132 N. W. 554, 557; *Pennington* v. *Pacific Mut. Life Ins. Co.* (1892), 85 Iowa 468, 52 N. W. 482, 39 Am. St. 306; *United States Mut. Acc. Assn.* v. *Newman, supra; Thayer* v. *Standard Life, etc., Co.* (1896), 68 N. H. 577, 41 Atl. 182; *McGlinchey* v. *Fidelity, etc., Co.* (1888), 80 Me. 251, 14 Atl. 13, 6 Am. St. 190; *Horsfall* v. *Pacific Mut. Life Ins. Co.* (1903), 32 Wash. 132, 72 Pac. 1028, 63 L. R. A. 425, 427, 98 Am. St. 846; *Barry* v. *United States Mut. Acc. Assn.* (1885), 23 Fed. 712; *Freeman* v. *Mercantile Mut. Acc. Assn.* (1892), 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753; *Root* v. *London Guaranty, etc., Co.* (1904), 92 App. Div. 578, 86 N. Y. Supp. 1055, 1057; *Lewis* v. *Brotherhood Acc. Co., supra;* Fuller, Accident and Liability Ins. 119 *et seq.* and cases cited; Richards, Insurance Law (3d ed.) 560 *et seq.*

The foregoing authorities establish the rule that in determining what is a visible mark of injury on the body the term visible is used in the broad sense of perceptible, discernible, clear, distinct and evident. In applying the rule, courts have recognized as sufficient knowledge obtained by a digital examination or manipulation of the body, an autopsy, and various manifestations (other than those readily observable upon the surface of the body) which afforded evidence

of internal injury which produced discernible physical effects capable of revealing to the mind the nature of the injury with such certainty as to satisfy the practical purposes such provisions are intended to subserve in insurance contracts. The contract made by the parties is to be reasonably and fairly interpreted in the light of the situation of the parties, and the purpose of the one to provide, and the other to secure indemnity, for loss resulting from injury or death occassioned by accident.

For reasons already stated the judgment is reversed with directions to the lower court to grant a new trial and for further proceedings not inconsistent with this opinion. Lairy, C. J., Ibach, Caldwell and Hottel, JJ., concur, Shea, P. J., dissents.

## DISSENTING OPINION.

SHEA, P. J.—On reëxamination of the questions presented by this appeal, a majority of the court has reached the conclusion that a rehearing should be granted and that the judgment of the lower court should be reversed.

I am unable to agree with the majority opinion in this case. The lower court held that there was an irreconcilable conflict between the general verdict and the answers of the jury to the interrogatories submitted. This is the sole question presented to this court. There are many citations of authority in the opinion of the court which state the law correctly as applied to the facts in the particular cases in their respective jurisdictions. There are many expressions in the majority opinion which in the main state the law correctly, but which have no application to the facts presented in this appeal. There is no question to be determined upon the evidence in this case, as to what constitutes visible marks, as the jury found that there were no visible marks upon the body of the decedent at the time of, or after, his death, and no court anywhere, or at any time, in so far as our research discloses, has ever held a thing visible which was really in-

344      APPELLATE COURT OF INDIANA,

Mutual Trust, etc., Co. *v.* Travelers Protect. Assn.—57 Ind. App. 329.

visible. Neither has any court ever held as a matter of law that a mark which the jury found to be invisible, was really visible, however, with so much of the opinion which holds that this court can not so declare as a matter of law, I agree.

I do not agree with the reasoning or conclusion of the court with respect to the other propositions discussed. It is correctly stated that all proof which might have been properly heard under the issues may be deemed to have been heard. In reasoning upon this principle it is suggested that the interrogatories find only that at the time of decedent's death and afterward no visible marks were upon the body. We are asked to hold that some space of time *might* have intervened between the time of the injury and the death of the decedent, and that the jury might have so found under the issues. Then we are asked to indulge in the inference or presumption based upon the first presumption that there *might* have been visible marks on the body at the time of the injury, which the jury might have found. Then we are asked to go a step farther and indulge in the additional inference or presumption that those visible marks *might* have disappeared before or at the time of decedent's death, and the jury might have so found. It seems to me that the theory announced by the majority opinion is hypothetic pure and simple, and if it becomes the law of this State, it will completely destroy the office of interrogatories submitted to juries for the purpose of eliciting the facts upon which they base their verdicts, and which have heretofore served a good and useful purpose. This contention is illogical and unsound, and is condemned by the authorities in our own State as well as by the text writers and decided cases of other jurisdictions without discord. One presumption can not be indulged to sustain another. A substantive fact must be proved before an inference can be drawn, and therefore a substantive fact can not be based upon an inference.

In the case of *United States Cement Co.* v. *Whitted*

(1910), 46 Ind. App. 105, 90 N. E. 481, this principle is clearly and aptly applied. The court said: "The charge of negligence made against appellant is that it maintained upon its premises a pool or ditch of scalding water, without sufficient guard, and into which appellee fell and was scalded. The injury complained of does not arise from wounds occasioned by the fall, but from burns and scalds inflicted by the hot water. So the gist of the wrong charged is the maintenance of the ditch or pool of hot water. The hot water created the danger and caused the injury. It is not averred in the complaint, nor does it appear from the evidence, that the ditch itself was dangerous, or that but for the presence of the hot water in it, appellant would be guilty of negligence in failing to maintain guards around it. Therefore, to establish appellee's case, the evidence must show that the presence of the hot water in the ditch, which alone caused the injury complained of, was due to some negligent act of appellant, or that it knew or should have known of its presence, and have maintained proper guards around it. The only evidence on this subject disclosed by the record is the testimony of several witnesses regarding the location and size of the ditch, and of appellee and other witnesses to the fact that on the occasion when the accident happened there was about eighteen inches of hot water in the ditch, and that the source of the ditch was in appellant's power house. From this fact, it might be possible to infer that the hot water came from the power house, but this would not justify the further inference that the ditch was customarily used by appellant as a conduit for hot water, or that the presence of the hot water in it on the occasion in question was either known by appellant, or was the result of any negligent act on its part." In this case, as disclosed, the evidence was before the court, and if the principle that inferences and presumptions are to be carried to the extent contended for in the majority opinion in this case is adhered to, this verdict should have been upheld.

346    APPELLATE COURT OF INDIANA,

Mutual Trust, etc., Co. v. Travelers Protect. Assn.—57 Ind. App. 329.

In the case of *United States* v. *Ross* (1875), 92 U. S. 281, 23 L. Ed. 707, this language is found: "These seem to us to be nothing more than conjectures. They are not legitimate inferences, even to establish a fact; much less are they presumptions of law. They are inferences from inferences; presumptions resting on the basis of another presumption. Such a mode of arriving at a conclusion of fact is generally, if not universally, inadmissible. No inference of fact or of law is reliable drawn from premises which are uncertain. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed. * * * A presumption which the jury is to make is not a circumstance in proof; and it is not, therefore, a legitimate foundation for a presumption. There is no open and visible connection between the fact out of which the first presumption arises and the fact sought to be established by the dependent presumption. * * * The presumption that public officers have done their duty, like the presumption of innocence, is undoubtedly a legal presumption; but it does not supply proof of a substantive fact. * * * Nowhere is the presumption held to be a substitute for proof of an independent and material fact."

Section 1029, 2 Chamberlayne, Mod. Law of Ev. reads as follows: "The requirement that the logical inference styled a presumption of fact should be a strong, natural and immediate one brings as a corollary the rule that no inference can legitimately be based upon a fact the existence of which itself rests upon a prior inference. In other words, there can be, in the great majority of cases, no presumption upon a presumption. On the contrary, the fact used as the basis of the inference, the *terminus a quo*, so to speak, must be established in a clear manner, devoid of all uncertainty." See, also, *Evansville Metal Bed Co.* v. *Loge* (1908), 42 Ind. App. 461, 469, 85 N. E. 979; *Dowell* v. *State* (1914), 181 Ind. 68, 101 N. E. 815; 3 Rice, Evidence §342; *United States* v. *Ross, supra; Smith* v. *First Nat. Bank* (1868), 99 Mass.

605, 97 Am. Dec. 59; *Jenkins* v. *State* (1885), 62 Wis. 49, 63, 21 N. W. 232; *People* v. *Kennedy* (1865), 32 N. Y. 141; *Neal* v. *Chicago, etc., R. Co.* (1905), 129 Iowa 5, 105 N. W. 197, 2 L. R. A. (N. S.) 905; *Crafts* v. *Boston* (1872), 109 Mass 519; *Ruppert* v. *Brooklyn Heights R. Co.* (1897), 154 N. Y. 90, 47 N. E. 971; *Commonwealth* v. *Webster* (1850), 59 Mass. 295, 52 Am. Dec. 711; *Asbach* v. *Chicago, etc., R. Co.* (1888), 74 Iowa 248, 37 N. W. 182.

Upon the theory that this court shall search the record in order to affirm the judgment of the lower court, there are many things disclosed by the briefs of the learned counsel in this case that might be properly discussed here that would thow much light on the action of the lower court, but no good purpose would be served by so doing. Every presumption is to be indulged in favor of the correctness of the ruling of the trial court. I am thoroughly convinced that a correct conclusion was reached, and that no error was committed by the trial court which warrants a reversal. With the proper regard for the opinion of the majority of the court, I am respectfully insistent that this judgment should be affirmed.

NOTE.—Reported in 104 N. E. 880, 885. As to proofs of death under the law of life insurance, see 137 Am. St. 718. As to the waiver of a provision in an accident insurance policy requiring notice of injury or death to be given within a certain time, see 21 Ann. Cas. 919. See, also, under (1) 31 Cyc. 669; (2) 25 Cyc. 885; (3) 25 Cyc. 917, 919; (4, 5) 38 Cyc. 1927; (6) 25 Cyc. 920, 924; (7) 25 Cyc. 954; 38 Cyc. 1927; (8, 11) 16 Cyc. 871; (9) 1 Cyc. 252; Accident Insurance 1 C. J. §80; (10) 1 Cyc. 243; Accident Insurance 1 C. J. §38.