Willie EVANS and John Evans,
Appellant (Plaintiff Below),

v.

The NATIONAL LIFE ACCIDENT
INSURANCE COMPANY, Appellee
(Defendant Below).

No. 2–483A112.

Court of Appeals of Indiana,
Second District.

Aug. 27, 1984.
Rehearing Denied Oct. 5, 1984.

George T. Popcheff, Robert B. Lutz, Indianapolis, for appellant.

Albert C. Harker, Marion, for appellee.

SHIELDS, Judge.

Willie and John Evans (Evanses) appeal the denial of insurance benefits for the death of Jerome Evans (Insured) under an Additional Indemnity Agreement to a life insurance policy issued by The National Life & Accident Insurance Company (National).

We affirm.

## FACTS

In 1970, the Insured purchased a life insurance policy from National in the face amount of $10,000. At the same time, the Insured also purchased an Additional Indemnity Agreement (Agreement) which afforded an additional $10,000 in benefits if death resulted from "accidental means." The Insured died on the evening of February 23, 1979, as a result of strangulation due to a shotgun wound to the heart. The fatal shot was fired by Thomas Cox sometime after Cox and the Insured argued and engaged in physical combat at the Little Harlem Tavern in Marion, Indiana earlier that evening. National paid the Evanses, the named beneficiaries, the face amount

of the life insurance policy, $10,000, but refused to pay the additional $10,000 in benefits under the Agreement.

The Agreement provided benefits only for death resulting from "external, violent and accidental means" and enumerated seven specific exclusions from coverage, including death resulting from suicide, poisoning, disease, war, the intentional act of another, commission of an assault or felony, or operation of an aircraft.

On November 2, 1979, the Evanses filed suit against National for the additional benefits under the Agreement. Ultimately, the trial court issued findings of fact and conclusions of law concluding the Insured was intentionally murdered by Cox and denying the Evanses recovery based on three provisions of the Agreement. Specifically, the trial court concluded: 1) the Insured's death was not the result of "accidental means"; 2) the Insured died "directly or indirectly and wholly or partially as a result of the intentional act of another person," and 3) the Insured died "directly or indirectly and wholly or partially as a result of his commiting [sic] an assault or felony."[1]

On appeal, the Evanses challenge each of the trial court's conclusions. Our disposition necessitates review of only the following issue:

Whether the trial court erred in finding the Insured's death was the result of an intentional act of another and therefore properly excluded from coverage under the Agreement?

## DECISION

■ The Evanses correctly define the "intentional act" exclusion as an affirmative defense. Consequently, National had the burden of proving facts sufficient to demonstrate the Insured's death was the result of Cox's intentional conduct. *Brotherhood's Relief and Compensation Fund v. Smith*, (1971) 150 Ind.App. 452, 277

1. The quoted language of the trial court's three conclusions duplicates the exclusionary language of the Agreement.

N.E.2d 180; *Mutual Trust & Deposit Co. v. Traveler's Protective Association of America,* (1914) 57 Ind.App. 329, 104 N.E. 880.

■ Based on this burden of proof, the Evanses first challenge the sufficiency of the evidence to support the trial court's finding that the Insured's death resulted "directly or indirectly and wholly or partially as a result of the intentional act of another person." The Evanses highlight Cox's testimony that he did not intend to fire the shotgun or to shoot the Insured. However, on appeal we only consider the evidence and reasonable inferences which support the trial court's judgment; we neither weigh conflicting evidence nor judge the credibility of witnesses. The trial court's findings and conclusions will not be set aside unless clearly erroneous. *E.g., Baker v. Compton,* (1983) Ind.App., 455 N.E.2d 382.

With this standard in mind, we review the evidence most favorable to the trial court's judgment, as detailed in the court's findings and supported by the record. During the evening in question, the Insured and his brother, John, approached Cox and his three female companions at a table in the Little Harlem Tavern. The Insured and Cox argued about a pistol the Insured believed Cox had stolen. Cox, John, and the Insured went out the back door of the tavern where the Insured pistol whipped and threatened to kill Cox. John eventually interceded and he and the Insured left.

Cox did not immediately re-enter the tavern but stood outside and then sat in his brother's car. Cox then went back into the tavern and ordered a beer at the bar. About 15 minutes later, Cox turned and found the Insured behind him. The Insured told Cox he was going to kill him and then also ordered a beer at the bar. In fear of bodily harm, Cox waited a short time and left. A moment later Cox returned with a shotgun held in his right hand down by his leg as he approached the Insured. The Insured was standing at the bar with his back to Cox. Cox pointed the gun at the Insured, called the Insured's name and, as the Insured turned, Cox shot the Insured in the back.

After the shot, Cox dropped the shotgun and fought with the Insured. As the Insured lay dying on the tavern floor someone in the crowd yelled "Is he dead?" Cox kicked the Insured in the head and replied "If he ain't, he ought to be."

■ The evidence amply supports the court's conclusion the Insured's death was the result of Cox's intentional conduct. Contrary to the Evanses' assertion, the evidence clearly supports the conclusions that Cox intended to fire the shotgun and to shoot the Insured. Upon the Insured's return to the tavern, Cox left the tavern but, rather than staying away, returned armed with a shotgun, raised the shotgun, specifically called the Insured's name, shot the Insured in the back from a few feet away, and then kicked the dying man in the head. It was within the evidence for the trial court, as the trier of fact, to conclude Cox "intentionally" and "deliberately" "murdered" the Insured.

■ Even assuming the sufficiency of the evidence, the Evanses contend the policy exclusion for intentional conduct was ambiguous and unconscionable. The Agreement, however, expressly excluded coverage "if the death of the Insured resulted either directly or indirectly, or wholly or partially, from ... the intentional act of another person ...." Regardless, the Evanses contend the court must give effect only to the average insured's reasonable expectations of coverage. They argue "[i]t is reasonable to assume Jerome Evans intended to purchase coverage of 'accidents' being any unexpected death not due to medical or health causes as he was familiar with the term." [2] In effect, the Evanses would have this Court hold all clearly ex-

**2.** In their brief the Evanses contend the trial court improperly excluded evidence regarding the Insured's expectations of coverage. Any error in this regard is waived, however, in view of their failure to raise the issue in the Motion to Correct Errors. Ind.Rules of Procedure, Appel-

pressed exceptions to coverage, unconscionable and void as against public policy; the insured's expectations would substitute for the clear contractual provisions.

We are unaware of any cases or reasoning supporting the intentional act exclusion as unconscionable. Furthermore, the Evanses' arguments confuse unconscionability and ambiguity. The insured's expectations of coverage are significant in construing ambiguities. An insurance policy is a contract and is consequently governed by the law of contracts. The objective of the court is to enforce the intent of the parties as manifested by the contract. Since insurance contracts are typically contracts of adhesion, any ambiguities must be construed in favor of the insured. For example, the phrase, death resulting from external, violent and "accidental means", has been viewed as ambiguous. It is unclear, for instance, whether "accidental" is to be viewed from the insured's perspective or from that of a reasonable person. Consequently, in Indiana, "accidental means" is given a construction most favorable to the insured. *Freeman v. Commonwealth Life Insurance Co.*, (1971) 149 Ind.App. 211, 271 N.E.2d 177, *trans. denied* 259 Ind. 237, 286 N.E.2d 396.

Exclusionary provisions in insurance contracts are equally susceptible to construction against the insurance company if the exclusionary language is ambiguous. An exclusion will be given effect only if it unmistakably brings the act or omission within its scope. *Huntington Mutual Insurance Co. v. Walker*, (1979) 181 Ind. App. 618, 392 N.E.2d 1182. Nonetheless, the parties are still entitled to make their contract; an exclusion plainly stated in the policy is enforceable.[3] *Cincinnati Insurance Co. v. Mallon*, (1980) Ind.App., 409 N.E.2d 1100; 45 C.J.S. *Insurance* § 772 (1946).

In the instant case, there is no ambiguity. An identical situation was presented in *Continental Casualty Co. v. Klinge*, (1924) 82 Ind.App. 277, 144 N.E. 246, by an accidental death policy which "[did] not cover any loss ... which results from the intentional act of the insured or of any other person." *Id.* at 279, 144 N.E. at 247. In *Klinge*, the court concluded that a police officer's confessed intent to fire two shots directly at the Insured and to hit the Insured constituted the intentional conduct contemplated by the exclusion:

"Clearly, then, the death of the insured resulted from the intentional act of the officer, and comes within the exception in the policy. The parties had the right to make the insurance contract sued on, including the intentional act clause. *The contract is not ambiguous. Its terms, as to the clause under consideration, are definite and certain.* An insurance policy, like any other contract, when free from ambiguity, is to be enforced according to its terms."

*Id.* at 280, 144 N.E. at 247 (emphasis added). Once the trial court resolved the conflicting testimony regarding Cox's intent, application of the exclusion was clear.

"An insurance company is free to determine by its contract what risks it is undertaking to insure, provided policy provisions do not violate statutory mandates or are not against public policy." *Cincinnati Insurance Co. v. Mallon*, 409 N.E.2d at 1103. Insurance companies, like individuals, are free to limit their liability in a manner not inconsistent with public policy. Consequently, plainly expressed exceptions, exclusions and limitations are entitled to construction and enforcement as expressed. *Id.* citing 42 Am.Jur.2d *Insurance* at § 279. We cannot rewrite the insurance contract for the parties. *Id.* at 1103.

Judgment affirmed.

BUCHANAN, C.J., and SULLIVAN, J., concur.

---

late Rule 8.3(A)(7). In any event, evidence of the Insured's intent is inadmissible given this unambiguous provision of the policy.

**3.** In the absence of such an exclusion in the policy, an accident insurance policy may cover death as a result of the intentional infliction of injury. *E.g., Hessler, v. Federal Casualty Co.*, (1921) 190 Ind. 68, 129 N.E. 325.