## RHODIUS ET AL. *v.* JOHNSON.

[No. 2,891.    Filed March 30, 1900.]

APPEAL AND ERROR.—*Assignment of Error.—New Trial.*—The action of the court in overruling a motion to instruct the jury to find for defendant is not the subject of an independent assignment, but is a reason for a new trial.  *p. 403.*

PRACTICE.—*Harmless Error.*—An alleged error of the court in overruling a motion to instruct the jury to find for defendant is waived by the introduction of evidence after the denial of the request. *p. 403.*

APPEAL AND ERROR.—*Interrogatories to Jury.*—Interrogatories and answers recorded with the verdict and copied in the transcript are properly in the record on appeal.   *p. 403.*

VERDICT.—*Answers to Interrogatories.—Conflict.—Negligence.*—Answers to interrogatories in an action for injuries sustained by falling down an elevator shaft, showing that plaintiff was passing through a dimly-lighted hallway, endeavoring to find the club room of a saloon, and, seeing a door partially open, attempted to enter, and fell down the shaft, are not in irreconcilable conflict with a general verdict for plaintiff, although it was shown that if she had paused a moment at the door of the elevator, and looked at what was before her, she could have seen the danger.  *pp. 403-407.*

APPEAL AND ERROR.—*Assignment of Error.—Refusal to Submit Interrogatories to Jury.*—The action of the court in overruling a motion to submit certain interrogatories to the jury is not the subject of an independent assignment of error.  *p. 407.*

SAME.—*Assignment of Error.—Waiver.*—Specifications of error in a motion for a new trial which are not discussed are waived.  *p. 407.*

CONTRIBUTORY NEGLIGENCE.—*Personal Injuries.—Damages.*—Plaintiff brought suit for injuries sustained by falling through an elevator shaft.  It was shown that plaintiff entered the building through a dimly-lighted hallway, and saw the elevator door standing open, supposed it led into a room, and stepped into the elevator shaft. *Held*, that the question as to plaintiff's contributory negligence was properly submitted to the jury.  *pp. 408-415.*

INSTRUCTIONS.—*Personal Injuries.—Negligence.*—In an action for injuries sustained by plaintiff by falling down an elevator shaft by passing through a partially open door, which she mistook for an entrance to a room in defendant's place of business, the court instructed the jury that if plaintiff had knowledge that there were rooms where patrons were received in connection with such busi-

ness, and that such rooms were to be entered through doors opening off of passageways, plaintiff had a right to endeavor to enter such rooms, and to assume that a door similarly situated to those opening into such rooms would not be left open or unguarded if it led to the elevator shaft, unless there was something which would put an ordinarily prudent person on his guard, and that plaintiff, on opening the door so situated, would not be required to look or listen before stepping through such door in order to ascertain whether there was danger, unless, under all the circumstances, there was such an appearance of danger as would put an ordinarily prudent person on guard; but that plaintiff could not recover if she heedlessly opened a door with which she was not acquainted, and, without regard to consequences, stepped through the same and was injured. *Held,* that the instruction as a whole fairly stated the law. *pp. 415, 416.*

INSTRUCTIONS.—*Personal Injuries by Falling Through Elevator Shaft.* —*Joint Liability of Landlord and Tenant,*—In an action against the owner and tenant of a building for an injury sustained by plaintiff by falling down an elevator shaft, an instruction that the owner was under obligations to use proper care to prevent the patrons of the tenant from being injured was proper, where it was shown that the landlord and tenant used the elevator jointly. *pp. 416, 417.*

APPEAL AND ERROR.—*Instructions.—Record.*—Error cannot be predicated upon the action of the court in giving upon its own motion a certain instruction, where the record shows that the instruction was asked by defendants, and given, as modified by the court, and excepted to, and the modification is not shown. *p. 417.*

From the Marion Superior Court. *Affirmed.*

*J. W. Holtzman, J. M. Leathers* and *H. N. Spaan,* for appellants.

*W. A. Pickens, L. A. Cox* and *S. W. Kahn,* for appellee.

COMSTOCK, J.—Appellee sued appellants for injuries sustained by her in consequence of falling down an elevator shaft on premises owned by appellant Rhodius, and by her leased to appellant Emminger, who used said premises for saloon purposes. A trial by jury resulted in a verdict in favor of appellee against the appellants for $2,000. With the general verdict, the jury returned answers to interrogatories. Judgment was rendered on the general verdict for the amount fixed therein. The appellants have assigned

as error the action of the court (1) in overruling appellants' motion to instruct the jury to find for the appellants at the close of the appellee's evidence; (2) in overruling the motion of appellants to render judgment in their favor on the answers to the interrogatories returned by the jury; (3) in overruling appellants' motion to submit to the jury interrogatories numbered three, four, seventeen, eighteen, thirty, thirty-one, thirty-two, forty, forty-one, sixty, sixty-one, sixty-three, sixty-five, and sixty-six requested by appellants; (4) in overruling appellants' motion for a new trial.

The first specification in the assignment of errors is not the subject of an independent assignment, but is a reason for a new trial. Upon another ground the merits of the question sought to be thus raised can not be considered, because appellants, by the introduction of evidence after the court had refused to instruct the jury to find for them, waived their motion. Elliott's App. Proc. §687; *Geary* v. *Bangs* (Ill. Sup.), 27 N. E. 462; *Grand Trunk R. Co.* v. *Cummings*, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. ed. 266.

It is insisted by counsel for appellee, before entering upon the discussion of the second assignment, viz., the overruling of appellants' motion for judgment in their favor upon the answers given by the jury to the interrogatories propounded, that no question is presented, because it does not appear that the interrogatories and answers were filed, or in any way made a part of the record. In this view we can not concur. The statute, §555 Burns 1894, §546 Horner 1897, provides that interrogatories propounded to the jury are to be recorded with the verdict. It clearly appears from the record that this was done.

It is contended by counsel for appellants that the answers to interrogatories can not be made to harmonize with the general verdict upon any hypothesis. This position is based upon the claim that these answers showed that appellee saw the place into which she afterwards stepped was dark; that she had sufficient time to look and ascertain the kind of

place she was stepping into; that she therefore had no excuse for her failure to exercise ordinary care to avoid injury; that she exercised no care, and, without excuse for not using care, walked into the elevator shaft. The following is a fair summary of the answers to the interrogatories pertinent to this question. On the day she was injured plaintiff went to the saloon to see her brother on business. About one year before the accident she had been in the club room of the saloon. She had been in the blue room, but on the day she received the injury she did not know the location of nor the way to the blue room. She was invited, either directly or impliedly, to go into the blue room by appellant Emminger. She attempted to go there to rest and for refreshment. Neither of the defendants had notice that plaintiff was attempting to get into the blue room. The passageway through which she attempted to enter said room was lighted sufficiently to discern objects therein. She could see the door into which she entered at the time she was injured. It was standing open, just before she fell into the elevator pit, from one foot to eighteen inches. She opened it wider in order to pass through. She could plainly see that it was open. There was no electric light burning in the ceiling of the passageway nor "down into the cellar", so as to shed light into the elevator pit into which she fell. She was not paying attention to just where she was going at the time she went into the door of the elevator. She did not look where she was going just before she fell. She did not know where the door led to. She could see that the place she was going into was dark. She could have seen what kind of place she was going into if she had looked just before she fell. She had time to look about her carefully just before she put her hand on the elevator door, and ascertain what kind of place she was going into. It was light enough to see about her in the passageway just before she opened the elevator door. She was not acquainted with the doors, nor where they led. If

she had paused a moment at the door of the elevator, and looked at what was before her, she could have seen what kind of place she was attempting to go into.

In passing upon this question, it must be remembered that every presumption will be indulged in favor of the general verdict. It finds that appellee was without fault proximately contributing to her injury; that she was at all times exercising due care; that at any point where she appeared not to have exercised the care required of an ordinarily prudent person under the same circumstances there were facts or circumstances indicating that she did exercise such care; and that "if, taking all the special findings together and adding to them any other fact that might have been proved under the issues, an irreconcilable conflict with the general verdict can be avoided, the answer to the interrogatories will not be allowed to control." Under the issues, other facts might have been proved, and the seemingly irreconcilable conflict claimed to exist have been avoided. Besides, appellee was not required to look at every place she stepped. She had the right to rely upon appellants' keeping their premises in a reasonably safe condition for those invited upon them.

In *Amidon* v. *Gaff*, 24 Ind. 128, the court said: "The special findings override the general verdict only when both cannot stand, and this antagonism must be apparent upon the face of the record, beyond the possibility of being removed by any evidence legitimately admissible under the issues, before the court can be successfully called upon to direct judgment in favor of the party against whom a general verdict has been rendered by a jury upon their oath."

In *Pittsburgh, etc., R. Co.* v. *Martin*, 82 Ind. 476, there was a general verdict, with answers to interrogatories. It appeared from the answers to the interrogatories that the plaintiff was driving upon a highway approaching the track of the defendant, and before he arrived at the track he

looked in the direction from which the train was approaching, and saw it coming, about ten rods distant, at the rate of twenty-five miles an hour, and although he had not yet come upon the track, he arose to his feet, and whipped his horses upon the track. The court held that the general verdict in favor of the plaintiff must prevail, following the rule laid down in *Amidon* v. *Gaff, supra.* See, also, *City of Ft. Wayne* v. *Patterson,* 3 Ind. App. 34; *City of Huntington* v. *Burke,* 21 Ind. App. 655; *Sponhaur* v. *Malloy,* 21 Ind. App. 287; *Louisville, etc., R. Co.* v. *Creek,* 130 Ind. 139, 14 L. R. A. 733, and authorities there cited. Also, *Shoner* v. *Pennsylvania Co.,* 130 Ind. 170.

In *Stevens* v. *City of Logansport,* 76 Ind. 498, appellant, who was the plaintiff below, in the night-time, when it was too dark to see the condition of the street, made a rapid succession of steps or leaps from six to ten feet each in crossing the street in a locality in which he was not familiar, and alighted in a ditch, causing himself injury. The trial court rendered a judgment on the interrogatories against Stevens, who had received a general verdict in his favor. The Supreme Court reversed the judgment, saying: "The rule is settled by a long and unvarying line of decisions, that the general verdict shall not be controlled by the answers to interrogatories, if reconcilable therewith upon any supposable state of facts provable under the issues in the case. *Higgins* v. *Kendall,* 73 Ind. 522. It necessarily follows that, in considering whether the facts specially found are irreconcilable with the general verdict, no reference can be made to the evidence actually adduced on the trial. The question to be decided is not whether, in the light of the evidence adduced, the general verdict is inconsistent with the facts found; the remedy in case of such an inconsistency is a new trial. But, upon the motion for judgment *non obstante,* the general verdict prevails over the special findings, if there could have been, under the issues, proof of supposable facts, not inconsistent with those specially found, suffi-

cient to sustain the general verdict; or, in other words, sufficient to reconcile the general verdict with the special answers. * * * But, even if he possessed no knowledge of its previous condition, he had a right to presume that the street was in reasonably safe order, and that, in crossing it, he would not incur unusual risks, or meet obstructions inconsistent with the safety of those who in the ordinary ways use a frequented street. That it was or had been such a street may be presumed in support of the verdict. Whether the appellant was justifiable in attempting to cross the street in the manner stated, depended on the circumstances and motive or necessity which impelled him. If men of ordinary prudence and caution, under the same circumstances, would have done the same thing, he was not in fault for doing it; and this was a question of fact for the jury which, it must now be presumed, they found correctly." Upon this branch of the case, we do not deem it necessary to give further citations. The court did not err in overruling the motion.

The third specification in the assignment is not the subject of an independent assignment. *Stonewall* v. *Thomas*, 76 Ind. 506. It is, however, given as a reason for a new trial, but is not discussed.

Under the fourth specification of the assignment of errors, appellants' counsel discuss the first, second, third, twenty-third, twenty-sixth and twenty-seventh reasons for a new trial. The other reasons are, under the rule, waived. The first, second, and third reasons given in the motion for a new trial are, respectively, that the verdict of the jury is contrary to law; is contrary to the evidence; and not sustained by the evidence. In support of these reasons counsel for appellants contend (1) that the evidence shows that appellee was guilty of negligence contributing to her injury; (2) that appellants were not negligent; that the fact that appellants, or one of them, through his or her servants, left the elevator door unlocked and open was not negligence.

About the following facts, as shown by the evidence, there
is no controversy: Appellants' saloon fronted Circle street,
in the city of Indianapolis, facing toward the northwest,
with the rear entrance in a narrow street called Court
street. The accompanying map shows the rear part of the
saloon property which is involved in this case.

The entrance is through a hallway nearly twenty feet
long, which is divided into two parts about the middle, con-
nected by a doorway; the door, at the time of the accident
being off the hinges. The hall had a high ceiling. The hall
was in the rear of the saloon, with no light entering it ex-
cept from the door at Court street and what light found its
way from the front of the saloon. It was on a bright day in

June. Appellee came directly from the bright light into this comparatively dark hall. She had walked a long distance, was tired, and entered the hall in company with her sister and one Elmer Steward. As shown by the map, the location of the elevator door was at a point where it might readily be mistaken for a passageway to one of the rooms for entertainment. The door to the elevator was without a spring on it, or anything to indicate that it opened into an elevator. There was no light in the cellar at the time. Said open door did not disclose what sort of place it was. The keys to the door were kept in the saloon, and any employe could get them, and use the elevator. At the time of the accident the door of the elevator was standing open about one foot or eighteen inches. Appellant Rhodius, had partial control of the elevator, and on the morning of the accident one of her servants had used it. Emminger conducted the saloon, inviting both men and women to patronize it. The rooms in the rear, shown upon the map, were for his patrons. The door of the club room sometimes stood open ready for any one to enter. Appellee had been there before, had seen other people in the club room, and, according to testimony other than her own, had been in the blue room the spring before she was hurt, although she stated, at the time of the trial, that she did not remember having been in that room. When she went into the hallway, she saw that the door of the elevator was standing open. She supposed it led into a room. She laid her hand on this door, opened it, said to her sister "Let us go sit down", and stepped into the elevator shaft, and was seriously injured. Appellee, her sister, and Elmer Steward entered the rear door of the hallway, which was standing open; walked more than half way up the hall. She and her sister stopped within a foot of the elevator door, and stood there in full view of the opening. She said that the place was dark. Knew that the door did not open into any place she had ever been. She did not think the place she was looking into was the blue room, and

knew it was not the club room.  When she opened the door wider she walked into it, without paying any attention to what she was stepping into.  Appellee testified:  "I saw a door standing there.  I knew everything was dark, and, just paying no attention, I did not think any body would have such a trap in the house as that.  So, when I got hold of the door, I stopped, and said to my sister, 'Come on Ida, let us go and sit down.'  I just made a step with my hand on the door, and stepped, and down I went."

"In cases involving questions of negligence, the rule is now settled that, where the facts are undisputed, and the inferences which may be drawn from them are not equivocal, and can lead to but one conclusion, the court will adjudge as matter of law that there is, or is not, negligence. While in cases where the facts are disputed, or where they are equivocal and different inferences can reasonably be drawn from them, the question of negligence must be determined by the jury under proper instructions." *Shoner v. Pennsylvania Co.*, 130 Ind. 170, 177, and cases cited.

In view of the fact that the general verdict involved the finding that appellee was free from fault contributing to her injury, and that appellants were guilty of negligence, can we say that only one inference can be reasonably drawn from the foregoing facts, which are undisputed, and that inference that she was negligent, or not exercising the care which would, under the circumstances, have been used by an ordinarily prudent person?

The question to be determined from the evidence is whether appellee was proceeding as an ordinarily prudent person would have proceeded under the circumstances.  The open doorway, if not an invitation to enter, was certainly not a warning of danger.  What is due care, must depend upon circumstances.  As stated in *McRickard v. Flint*, 114 N. Y. 222, the facts in which case were very much like those in the case at bar, McRickard attempted to enter the manufactory of the defendant, and seeing a door partly

Rhodius v. Johnson.

open, entered it, and fell down an elevator way. The court said: "If the plaintiff had stopped and looked about when he entered the door, he evidently could have seen the situation. Because he failed to do this it is contended that he was necessarily chargeable with contributory negligence. The plaintiff probably did not stop after he proceeded to enter. . * * * It was the duty of the plaintiff to exercise reasonable care, and to take observation of that which was apparent to view as he proceeded. But what is due care and diligence depends upon circumstances. The same precautionary means requisite to relieve a party from the charge of negligence when he approaches known places of danger, or places where danger may be apprehended, may not be required of him when he has no occasion to suppose that danger may be encountered. It cannot be said that the plaintiff upon this occasion was required to apprehend that there might be an exposed elevator pit in the place where he entered. The fact that the door was partly opened enabled him to suppose it was a suitable place of entry, so that the question is whether not seeing it was necessarily negligence on his part. That is not so, unless he was required to stop and take careful observation of the place when he entered upon the threshold and before he proceeded further to enter the room. He says he looked, saw no hole, and one step took him into it. This question of contributory negligence may be considered in view of the influences which ordinarily control human action. That is to some extent governed by appearances, and is not always the consequences of failure to exercise the greatest prudence or to make use of the best judgment. Here the plaintiff in stepping into the room, the first step he took after his entry onto the threshold at a partially open door, received the injury from a cause which he had no apparent reason to expect and which he failed to see until too late to avoid the calamity. And the fact that the difference in time between his entrance into the room and his fall was only mo-

mentary is a circumstance bearing upon his opportunity to see the danger and probably may have had some consideration upon the question of contributory negligence. The conclusion of the jury that he was free from that imputation was permitted by the evidence."

In *Tousey* v. *Roberts*, 114 N. Y. 312, the elevator causing the injury was in the hallway at such a point as that it was a disputed fact whether or not at the time of the injury an artificial light was necessary. The elevator door was opened by a boy, and the plaintiff, failing to observe that the car was not in place, stepped in, and was injured. The court said: "It was not, as a matter of law, contributory negligence in the plaintiff to pass through the door without stopping to look and listen. An elevator for the carriage of persons is not, like a railroad crossing at a highway, supposed to be a place of danger, to be approached with great caution; but, on the contrary, it may be assumed when the door is opened by an attendant, to be a place which may be safely entered without stopping to look, listen, or make a special examination." While, in the case at bar, the door was not opened by any one in the presence of appellee, it was standing open.

In *Camp* v. *Wood*, 76 N. Y. 92, the defendant owned a three-story building, upon the third floor of which was a hall which he rented for dancing. The hall was reached by two stairways, the one above the other. In front of the foot of the stairway on the second floor a hallway led to a door opening on a porch or awning, just in the same manner as the door on the first floor in front of the foot of the first stairway opened on the street. The door on the second floor was left unlocked. The plaintiff attended a dance, and came down the upper stairway on the second floor, walked out through the unlocked door onto the porch, and walked off, and was injured. The court held that the case was properly submitted to the jury, and the verdict sustained, although the evidence showed that the plaintiff was

at the time intoxicated. The court said that the defendant "Was bound to exercise care to provide safe arrangements for the entrance and departure of people, who came there upon his invitation."

In *Brosnan* v. *Sweetser*, 127 Ind. 1, the opening into which plaintiff fell and was injured was directly in front of her; she had good eyesight, and, if she had been looking where she was stepping,—as it is insisted the appellee in the case at bar should have been looking,—she would not have fallen through the trap-door. It was in a store, where the people were in the habit of passing, and a clerk had been detailed to guard it, and there was testimony showing that the clerk had called to the plaintiff, warning her of the danger. The court held that the plaintiff in that case was not guilty of negligence, although she might, by using her eyesight, have avoided injury, and they put their decision upon the ground that she was at a place where an ordinarily prudent person would suppose there was no danger, and therefore she was not required to exercise such a degree of care as to look where she was stepping. The appellee in the case at bar was, at the time of her injury, at a place where she had a right to expect that dangerous pitfalls would be properly guarded, and she went through a door that was standing partially open, so as to indicate that it was not at a dangerous place, and which door was located where one would naturally expect to find a passageway leading to a room. It should be remembered that the place where appellee herein was injured was a place where the public was invited to come and take seats in the rooms off to the right of the entrance from the rear for the purpose of taking refreshments. It is proper to remember that there was no light burning in the passageway, nor in the elevator shaft below, and that, having just entered the hall from the bright light outside, everything within would appear the less distinct to her.

*Cincinnati, etc., R. Co.* v. *Claire*, 6 Ind. App. 390, on p.

398, was an action for personal injury at a defective street crossing. In the course of the opinion, the court said: "It is further urged that the uncontradicted evidence showed the appellee to have been guilty of contributory negligence.. This contention is based upon the ground that the appellee stated in her testimony, in answer to a question, that, as she walked along the crossing, she did not look where she was putting her feet. We do not regard this statement as conclusive evidence of negligence on her part. We think the question was properly left to the jury."

The reported cases are without limit as to number in which different courts of last resort have reached different conclusions on questions of negligence and contributory negligence, where the facts, as stated, were very similar in the different cases. The respective positions of counsel for appellants and appellee in the case at bar find support in many decisions. They cite many authorities without by any means exhausting the list in addition to those referred to herein. We think to give and comment upon them would unduly extend the length of this opinion without profit. They all recognize the rule by which the required care of one injured by accident, inadvertence, or carelessness is to be measured, but are irreconcilably in conflict in its application. It is seen that the conduct in one instance of an injured party is by one court held to be that of an ordinarily reasonable and prudent person under the circumstances, and like conduct by another person is by another court held to be gross carelessness. Yet the degrees of care required of a person invited into a place of business or amusement in all of them is recognized as much less than that of one crossing a railroad track, passing through a factory in which there is running machinery, or of one, the nature of whose employment exposes him to unusual danger. We have cited only a few cases as examples, stating facts from which the courts have held juries were to draw the inferences of care or prudence. They agree,

however, upon the proposition that, when more than one inference can be reasonably drawn from the evidence by fair-minded men, the question of negligence should be submitted to the jury under proper instructions. We can not say that only one inference can be drawn from the evidence in this cause. Nor can we say as a matter of law that appellee's conduct was not that of an ordinarily prudent person under the circumstances. Upon the question of negligence and contributory negligence, the jury were fully and correctly instructed. Appellants were clearly guilty of negligence; but that, with the question of appellee's contributory negligence, was properly submitted to the jury.

The twenty-third, twenty-sixth, and twenty-seventh reasons for a new trial are the giving to the jury by the court of its own motion instructions twelve, fifteen, and sixteen. The following is the language of instruction number twelve. "If plaintiff had knowledge that, in connection with the main or general business room, there were other rooms where patrons were received in connection with such business, and that such rooms were to be entered through doors opening off of passageways leading to such business room, then plaintiff had a right to endeavor to enter such other rooms, and to assume that a door similarly situated to those opening into such rooms would not be left unlocked, open, or unguarded if it led to the hatchway or elevator shaft, unless there was something which would put an ordinarily prudent person on his guard as to such matters; and the plaintiff, on opening a door so situated, would not be required to look or listen before stepping through such door in order to ascertain whether there was danger, unless, under all the circumstances, there was such an appearance or suggestion of danger as would put an ordinarily prudent person on guard to avoid dangers which such a person would reasonably apprehend under the same circumstances. Plaintiff cannot recover if she heedlessly, and without using due care, opened a door with which she was not acquainted, and,

without regard to consequences, stepped through the same, and was injured; but if she was invited to enter the said business place and its appurtenant parts, if any, then she was bound to make investigation and take care only to the extent that the circumstances would suggest to an ordinarily prudent person that danger in so doing might reasonably be apprehended." The objection stated to this instruction is that it says, in effect, that a person can go into such business place, wander around over the same, open any door he can, or make any other investigations he may see fit, in his endeavor to reach a room he knows is connected with such place, but does not know the location of. It is further urged that, "in effect, it says that plaintiff had a right to assume that any door she might find unlocked, open, or unguarded did not lead into an elevator shaft, or other place down which she might fall, and that she might walk through any such door without looking at what was before her or using her faculties in any way." The correctness of an instruction is to be determined from its consideration as an entirety. Without conceding that any part or parts are fairly subject to the criticism made as a whole, we think it states the law.

Instruction fifteen is as follows: "If the passageways leading to such place of business were also used by the owner of the building, and for purposes of the owner, and the place which is alleged to be dangerous was used as well for the purposes of the owner as of the tenant, then the owner was also under obligation to use the care herein defined, if the owner had reason to believe that patrons of the tenant would use such passageways. If the tenant have conclusive control of the passageways and the entrances to the place, then he alone is bound to exercise such care. If both have a right to use it for the prosecution of their respective occupations therein, then both must do so." The objection made to this instruction is that, if appellant Rhodius used the elevator, she would be liable for the neg-

ligence of any one else who used it.    There was evidence
indicating that appellants,—one as landlord, the other as
tenant—used the elevator jointly.    This instruction tells
the jury that under such a showing, the owner was under ob-
ligations to use proper care to prevent the patrons of the
tenant from being injured.    The latter part of the instruc-
tion relating to the duty of the tenant is not objected to.

Upon the page of the record referred to in appellants'
brief, in discussing the twenty-seventh reason for a new
trial, said reason was stated in the following language:
"Because the court erred in giving upon its own motion in-
struction number sixteen to the jury, to which instruction
the defendants at the time excepted."    Upon the page of
the record to which we are referred for the instruction we
find instruction numbered sixteen.    At the conclusion of
this instruction is this statement:    "Asked by defendants,
and given, as modified by the court, and excepted to by each
defendant at the time, June 17, 1897.    L. M. Harvey,
Judge."    The record, therefore, shows that the instruction
was asked by defendants; that it was given as modified.
The modification is not shown.    Defendants could only
except to the modification.    No question upon this reason
for a new trial is presented for review.

We find no error for which the judgment should be re-
versed.    Judgment affirmed.