JOSEPH WEREBEYCHICK *vs.* THE MORRIS LAND AND DEVELOPMENT COMPANY, INCORPORATED, ET AL.

Third Judicial District, New Haven, June Term, 1928.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued June 14th—decided July 16th, 1928.

*Samuel A. Persky* and *Arthur B. O'Keefe,* with whom, on the brief, was *Thomas F. Mitchell,* for the appellant (defendant Adaskin Furniture Company).

*Walter J. Walsh* and *Arthur Klein,* for the appellee (plaintiff).

MALTBIE, J. This is an action brought by the plaintiff to recover for personal injuries suffered by reason of falling into an elevator well in a building which was owned by one of the defendants, The Morris Land and Development Company, Incorporated, and the greater portion of which was leased by the other defendant, Adaskin Furniture Company, Incorporated, a dealer in furniture. The plaintiff obtained a verdict against both defendants and each moved to set it aside as against the evidence, which motions the trial court denied. The defendant Adaskin Company has appealed from the denial of its motion.

There was much conflict in the testimony, but for the purposes of this appeal we shall consider as proved such facts going to support the claim of the plaintiff as are reasonably supported by the evidence and shall state

them as the facts of the case. Upon this basis the situation presented was this: On January 8th, 1926, the building was seriously damaged by fire. The Morris Company, under the terms of its lease and by arrangement with the Adaskin Company, entered upon the premises and made the necessary repairs. In the process of doing so it had to remove a large amount of debris and partially burned wood. One Joseph Morris, the brother of the president of the Morris Company, was in charge of this work for that company. One day in February, 1926, the plaintiff, who was an expressman, was driving his horse and cart by the building when Morris asked him if he would deliver some wood for him at a certain address. They agreed upon a price and the wood was loaded into the cart by the plaintiff, his helper and some men employed upon the premises, who were directed to assist in the work by Morris. When the wood was loaded, the plaintiff asked for his pay, but Morris, who was standing on the sidewalk in front of the building, told him to deliver the wood and he would pay him when he came back; the plaintiff insisted that he did not have time to come back, but Morris said to him: "Any time you pass by here, I will be in that building." The plaintiff then delivered the wood at the address given, which was the home of the mother. of Morris. Some days later, the plaintiff was passing the building, the front door was open, and he went in to find Morris. Seeing no one and hearing noises upstairs, he walked along, intending to look upstairs, and fell into the elevator well.

There can be no question that the statement of Morris to the plaintiff above quoted was an invitation to him to enter upon the premises and look for him there to get his pay. When the accident happened the plaintiff was clearly acting within the scope of the invitation. The removal of the wood was incident

to the making of the repairs and a work which necessarily served the interest of the owner of the building. Morris, as we have said, was in charge of that work. On at least one occasion he had hired a man to cart rubbish away. It was part of his duties to keep track of loads of refuse removed and after a cart had been loaded the driver would enter the building to report to him and look about until he found him. One man engaged in taking debris away, testified that after he had worked some days, he would find Morris and the latter would give him a slip showing what he had done, which he would take to the office of the company to secure his payment; and a carpenter who was working on the building testified that sometimes Morris paid him his wages. Had Morris simply hired the plaintiff to take the wood away, an inference that he had authority to arrange with him to return for his pay would be clearly indicated. An incidental interest in the particular transaction, by reason of the benefit to his mother from receiving the wood, even though that interest led him to pay for the work from his own pocket, would not of necessity take the matter outside the scope of his authority. On the whole evidence, the question whether or not he had authority to invite the plaintiff to come upon the premises as he did was one of fact for the determination of the jury. *Schrayer* v. *Bishop,* 92 Conn. 677, 104 Atl. 349; *De Nezzo* v. *General Baking Co.,* 106 Conn. 396, 399, 138 Atl. 127. Their conclusion that Morris had that authority would require the further conclusion that when he returned, he was upon the premises as the invitee of the Morris Company. As such, those in charge of the building owed to him the duty to use reasonable care to protect him from injury for defects in its condition. *Geoghegan* v. *Fox & Co., Inc.,* 104 Conn. 129, 134, 132 Atl. 408.

At all times during the course of the repairs some of the furniture of the Adaskin Company was stored in the building; new furniture was received there and uncrated; and the employees of the company used the elevator in question, having preference in that regard over the workmen repairing the building, who also used it. The Adaskin Company continued to pay the rent for the building during the making of the repairs. It employed a watchman whose duty it was to see that none of its property in the building was unlawfully removed. It at all times retained the keys to the building and locked and unlocked the building night and morning. These facts, with other testimony in the record, would undoubtedly justify a conclusion that the Adaskin Company continued in joint occupancy of the premises with the Morris Company during the period of the repairs. That being so, the former was under an equal duty with the latter to see that reasonable care was taken so that any person upon the premises by invitation of the latter should not suffer injury from their defective condition. *Fort* v. *Reid Ice Cream Co.,* 98 N. J. L. 559, 119 Atl. 638; *Rhodius* v. *Johnson,* 24 Ind. App. 401, 416, 66 N. E. 942; *Weisenberg* v. *Winneconne,* 56 Wis. 667, 14 N. W. 280; *Klauder* v. *McGrath,* 35 Pa. St. 128. A very different situation would be presented if the plaintiff's injury had been due to negligence in the operation of the elevator by an employee of the Morris Company, who was engaged in the repair of the building, and in that event cases like *Reilly* v. *Shannon & Sons,* 180 Pa. St. 513, 37 Atl. 95, cited by the appellant, and our own case of *Douglass* v. *Peck & Lines Co.,* 89 Conn. 623, 95 Atl. 22, might be in point.

The appellant does not claim that a conclusion of negligence in leaving the elevator well unguarded and unmarked might not have been reasonably reached by

the jury. The inside of the first floor of the building at the time the plaintiff entered it was quite dark, so that anyone walking in the neighborhood of the elevator shaft could see only a very short distance in front of him, some five or six feet. The elevator was at an upper floor, the doors to the elevator shaft on the first floor were open or had been removed, the elevator was wholly unguarded and at least on the side opening into the store there was no sign or other indication of its presence. When the plaintiff entered the store he saw no one and walked slowly across the floor looking about for Morris or someone else of whom he might ask directions. It is about thirty-five feet from the door of the store to the elevator shaft. The plaintiff heard a noise upstairs and intended to go up there in his search for Morris. When he had come within five or six feet of the elevator shaft he saw something which looked to him like a flight of steps going upward. Looking straight ahead he proceeded toward them. Before he reached the place where they seemed to be, he fell into the elevator well. He saw no hole in front of him and took no special precautions to ascertain whether it was safe to proceed. The defendant stresses the fact that the condition of the building inside and out was such as would apprise any reasonably observant person that it was under repair and claims that this situation imposed a duty upon the plaintiff to use more care than otherwise would have been the case. But it is to be noted that they do not claim that any repairs were being made to the first floor of the building at the time of the accident. The mere fact that the building was under repair, while a circumstance to be considered, might well be regarded by the jury as of no great weight in warning the plaintiff of the possibility that he would be confronted by such a pitfall as an unguarded elevator well. Being on the premises by virtue

of the invitation extended to him by one of the joint occupants, he was entitled to assume that due care had been used not to expose him to danger from such a cause, and until something indicated to him the possibility of such a danger, it was not incumbent upon him as matter of law to exercise special precautions. Whether or not he was guilty of contributory negligence presented a fair question of fact for the jury. *Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 525, 131 Atl. 501; *Stump* v. *Burns,* 219 N. Y. 306, 114 N. E. 346; *Johnson* v. *Hopkins,* 213 Ala. 492, 105 So.. 663; *Fort* v. *Reid Ice Cream Co.,* 98 N. J. L. 559, 119 Atl. 638.

There is no error.

In this opinion the other judges concurred.