HELMER CARLSON *vs.* THE ASSOCIATED REALTY CORPORATION.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

700

Argued March 9th—decided April 26th, 1932.

*Robert J. Woodruff,* with whom, on the brief, were *Edward J. Brennan* and *Louis Shafer,* for the appellant (defendant).

*William L. Hadden* and *Adrian W. Maher,* for the appellee (plaintiff).

BANKS, J. This is an action brought by the plaintiff to recover for personal injuries suffered by reason of falling into an elevator well in a building owned by the defendant. The verdict of the jury was in favor of the plaintiff, to whom it awarded damages in the sum of $17,000. The court granted the defendant's motion to set aside the verdict unless the plaintiff entered a remittitur of $3000, which was done. The defendant appeals from the refusal of the court to set aside the verdict absolutely, and also assigns error in the charge and the refusal to charge as requested, and in certain rulings on evidence.

The defendant did not itself conduct business in the building in which the plaintiff was injured, but leased space in it to a large number of tenants. In the center of the building was a large space known as the loading room which contained two loading slips, each about fifteen feet wide and thirty-nine feet long, which were on the ground level, the floor of the building being raised about four and a half feet above them so that motor trucks could be conveniently unloaded while standing in the slips. The loading slips were on the north side of the building, immediately south of these was a platform about seven feet wide which was used as an unloading platform and also as a passageway through the building, and south of the passageway was

a freight elevator. The passageway was used in common by the tenants of the building, who also had the free use of the elevator, the power for which was furnished by the defendant. On the easterly and westerly sides of the elevator were folding wire gates which, if both the gates and the elevator were working properly and not interfered with, would remain open when the elevator was opposite the first floor, and would close when it left the floor. The plaintiff was employed in a building owned by the defendant adjoining and connected with that in which he was injured, and rented from it the room which he occupied in that building, either for himself or on behalf of his employer. When he rented the room the defendant's renting agent showed him how access could be had to it by passing through the loading room of the other building along the passageway between the loading slips and the freight elevator. While on his way to his room along this passageway the plaintiff turned to his left to avoid an object in the passageway, which he described as some pieces of beaver-board and other witnesses as corrugated cardboard, and fell through the open and unguarded elevator shaft receiving serious injuries.

The facts thus far stated were substantially undisputed. The plaintiff was an invitee of the defendant, which owed him the duty to use reasonable care to keep this common passageway in its building reasonably safe. *Werebeychick* v. *Morris Land & Development Co., Inc.*, 108 Conn. 226, 142 Atl. 739.

The complaint alleged that the defendant was negligent in two respects, (1) in failing to provide proper and adequate lighting at the entrance of the elevator shaft, and (2) in leaving the opening of the shaft uncovered and unprotected. The defendant contends that the plaintiff knew of the presence of the elevator, that it was in plain view as he came along the passage-

way, and that his fall was due to his own negligence in failing to make use of his senses. It appeared from the plaintiff's own testimony that on a few occasions prior to the accident he had passed along the passageway by the elevator, and the means of access to his own room shown him by the defendant's renting agent was along this passageway. He testified that the renting agent did not point out the elevator to him, and that he did not know that there was an elevator shaft there. There was a sharp conflict of evidence as to the light conditions at the entrance to the elevator shaft at the time of the accident which occurred on August 4th shortly after seven a. m. Eastern Standard time. There was evidence that the loading room was very poorly lighted, that there were no windows within thirty-eight feet of the elevator shaft, that the doors of the loading slips, which were forty-six feet away from the elevator shaft, were only partly open, and such light as came through them was from a courtyard entirely surrounded by brick buildings, that the floor of the room was dark and the hole of the elevator shaft looked the same as the floor surrounding it. The plaintiff was entitled to assume that due care had been used not to expose him to danger from such a cause, and until something indicated to him the possibility of such danger, it was not incumbent upon him as a matter of law to exercise special precautions. Whether or not he was guilty of contributory negligence presented a fair question of fact for the jury. *Werebeychick* v. *Morris Land & Development Co., Inc., supra; Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 525, 131 Atl. 501.

The defendant contends that it cannot be held responsible for the plaintiff's injuries since the control and operation of the elevator was solely in the hands of its tenants, and that it was the act of one of them,

or of some unauthorized third person, in fastening the gate open that was the proximate cause of the accident. The defendant furnished the motive power for the elevator, its janitor used it for the defendant's purposes whenever occasion arose, and the jury would have been fully justified in finding that the defendant had not completely relinquished the control and operation of the elevator to the tenants of the building. Moreover, the defendant's contention that it owed the plaintiff no duty in respect to the operation of the elevator is quite beside the mark, since the plaintiff's cause of action is not based upon negligence in the operation of the elevator, but upon the failure of the defendant to keep its premises reasonably safe for use.

As already stated, the elevator gates, if working properly and not interfered with, would remain open when the elevator was opposite the first floor, but would close when the elevator was moved. At the time of the plaintiff's fall the elevator was somewhere in the upper part of the building, and the wire gate was held open by a stick which had been inserted under it to keep it from automatically closing. The defendant contends that the proximate cause of the plaintiff's fall was the fastening open of the gate, which was not done by the defendant's servants or agents. If this were all of the evidence as to the responsibility for the open elevator shaft, there would be force in the defendant's claim that it could not be held liable for the unanticipated and unauthorized act of some third person over whom it had no control. There was, however, testimony that, for some time prior to the accident, when the elevator was stopped at the first floor it would not remain stationary but would creep up or down, and the gates would close. A stick placed under the gate would hold it open, and the defendant's night watchman testified that on various occasions he

would find the gate held open by a stick, as it was upon the occasion of the plaintiff's fall. The jury could reasonably find that the defendant either knew, or in the exercise of reasonable care should have known, of this potentially dangerous situation, and was negligent in failing to provide proper protection for the elevator shaft. The court did not err in denying the defendant's motion to set the verdict aside.

Most of the defendant's requests to charge, and of its exceptions to the charge as given, are based upon its mistaken assumption that the plaintiff's cause of action was for negligence in the operation of the elevator, and that the defendant owed him no duty in that connection because, as it claimed, the sole control of the elevator was in the tenants of the building. One of the defendant's claims, made in its requests to charge and its criticism of the charge, was that the plaintiff, as a tenant of the defendant, assumed the risk of the structural condition of the building as it appeared to be when his tenancy began. The unsafe condition arising from the open elevator shaft was not the result of a faulty plan of construction, but was due to the failure of the landlord to keep in reasonably safe condition a portion of the premises retained under its control, as it was its duty to do. The plaintiff, even if he was a tenant rather than an employee of a tenant, did not assume the risk of a breach of this duty by the landlord. *Brandt* v. *Rakauskas,* 112 Conn. 69, 74, 151 Atl. 315. Such of the requests to charge as embodied correct statements of the law applicable to the facts in the case were substantially complied with in the court's charge, and the charge itself was correct in law, adapted to the issues, and sufficient for the guidance of the jury.

The rulings upon evidence to which exception was

taken were clearly correct, and do not require discussion.

At the conclusion of the testimony the defendant moved that the court permit the jury to view the scene of the accident. The court, in view of structural changes since the accident, testified to in the evidence, and the impossibility of reproducing the conditions, particularly as to light, as they existed on the day of the accident, denied the motion. This was well within the discretion of the trial court. 2 Wigmore on Evidence (2d Ed.) § 1163; 38 Cyc. 1314.

The defendant contends that the verdict, even as reduced by the trial court, is excessive. The plaintiff is a mechanical engineer, and at the time of his injury was forty-five years of age. He was seriously and permanently injured, suffering abdominal injuries, fracture of the left hip, and three fractures of the pelvis. He was confined to the hospital for two months and to his home for a further period of six weeks, and there was testimony that he would be totally incapacitated for a period of six months as a minimum to a year and a half to two years as a maximum. He has a permanent deformity of the left leg, which is two and three quarters inches shorter than the right. He has a permanent physical disability of forty to fifty per cent. The plaintiff's surgical and hospital bills amounted to $1266, and his loss of earnings up to the time of trial was approximately $2300. The award of damages made by the jury was carefully considered by the trial court and substantially reduced. An examination of the evidence does not disclose that the damages awarded by the jury, after the reduction made by the trial court, were so clearly excessive as to justify interference by this court.

There is no error.

In this opinion the other judges concurred.