ARCHIE L. GIRARD ET AL. *v.* MINNIE KABATZNICK,
ADMINISTRATRIX, ET AL.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued December 5, 1941—decided January 9, 1942.

*J. Warren Upson*, with whom, on the brief, was *William J. Secor, Jr.*, for the appellant (named defendant).

*Vincent A. Miller*, with whom was *William F. Jones, Jr.*, for the appellant and appellee (named plaintiff).

*J. Stephen Knight*, with whom, on the brief, was *Morris Tyler*, for the appellee (plaintiff The Simmons Co.).

*Martin E. Gormley*, for the appellee (defendant The Great Atlantic & Pacific Tea Co.).

JENNINGS, J. Archie L. Girard was a truck driver employed by The Simmons Company. He was injured by a fall into an elevator pit in a three story block controlled by Minnie Kabatznick, Administratrix, doing business as the Kabatznick Furniture Company in Middletown. He sued her and joined as defendant The Great Atlantic and Pacific Tea Company which leased a portion of the basement and first floor of the building in which the injury occurred. The Simmons Company paid compensation to Girard and was joined as plaintiff upon its application under the statute (General Statutes, § 5231). The trial was to the court and resulted in a judgment for the plaintiffs against the named defendant and in favor of the Tea Company.

The finding is as follows: The building in which the injury occurred was of three stories with a basement. The portion of the basement and first floor leased to the Tea Company was marked by partitions.

All of the rest of the building was occupied by the named defendant except for a small portion of floor space adjoining the elevator shaft on the basement and first floors which was used in common by both. The elevator shaft was at the rear. It was entirely enclosed and doors were provided at the basement, at each of the three floors and, on the opposite side, at a loading platform on the first floor. These doors were so designed that they could not be opened from the outside unless the elevator was at the same floor level. On the day of the accident this safety device was, and for a long time previously had been, out of order.

Adjoining the main building was a shed. The rear door of the Tea Company store opened into it and in the shed adjacent to this door was a loading platform nine feet by four feet, and three and one-half feet high. A sliding door on this platform opened into the elevator shaft. There was a push button on the right door jamb, rather high up, which was connected with a bell in the furniture store but there was, at the time of the accident, no danger sign or other indication of the presence of an elevator shaft. The sill between the door and the shaft was twenty-two inches wide. The shed was used constantly by the named defendant for the receipt and delivery of merchandise and as a garage for her truck. A part was also used by the Tea Company for storage. Shortly after the Tea Company leased its store, it used this shed to receive merchandise on not more than three occasions. It proved inconvenient for this purpose and thereafter deliveries were made to the Main Street or front entrance. The elevator was used by the Tea Company to carry freight to and from the basement, but was entered from within the Tea Company store. This use was for the most part in the morning, before the furniture store opened. On the infrequent occasions when

employees of the Tea Company wanted to use the elevator during business hours, they did so under permission from the named defendant. The latter controlled the mechanism, located in a penthouse above the third floor, and the power used in the operation of the elevator, and paid the entire cost of power, repairs and maintenance. The elevator was registered with the labor department as that of the named defendant. While the portion of the first floor occupied by the elevator was within the limits leased to the Tea Company, the elevator is not mentioned in the lease. In a rider, attached to the lease, it is provided that the Tea Company can make use of the appurtenances of the leased premises.

The accident happened on February 18, 1939. That morning the Tea Company had used the elevator for about an hour. Later it had been used by an employee of the named defendant, who eventually left it at the second floor and went to dinner. He also left the Kabatznick truck backed up to the loading platform and the door at the loading platform opening into the elevator shaft open a few inches.

Girard had been a truck driver and delivery man for many years but had never before made a delivery at Kabatznick's. On the day in question he was directed to deliver to her a double bed spring mattress. He drove to the shed and found the space very cramped because of the presence of the Kabatznick truck. He finally got the mattress onto the loading platform and opened the door into the Tea Company store. Seeing that it was a grocery store and that everyone was busy he climbed onto the loading platform, observed the sliding door partly open and, supposing it gave entrance to a receiving room, pushed it a little more open and stepping forward fell into the shaft to its bottom, sustaining severe injuries. While it was a

bright day, the absence of windows in the walls and the presence of the truck, practically filling the shed, made it quite dark inside.

The attack on the finding by both appellants is fairly extensive but no change can be made which would affect the merits of the appeals.

The trial court visited and inspected the premises twice. It concluded that Girard was in the exercise of due care, that his injuries were caused by the negligence of the named defendant and that the Tea Company neither had nor exercised any control over the maintenance or use of the elevator, but that its use by the Tea Company was incidental or permissive only. The named defendant claims that the plaintiff exceeded the limits of the invitation extended to him as a business visitor so that she is not liable for the injuries sustained and that he is barred by his own contributory negligence. Girard claims that the Tea Company should have been held liable with the named defendant because of its control of the elevator.

The answer to the first question depends largely on the status of the plaintiff as an invitee or licensee. The distinction is important because a landowner owes the duty to an invitee to use reasonable care to keep his premises reasonably safe for his use. *Werebeychick v. Morris Land & Development Co., Inc.,* 108 Conn. 226, 229, 142 Atl. 739. A licensee, on the other hand, must take the premises as he finds them. *Rooney v. Woolworth,* 74 Conn. 720, 723, 52 Atl. 411; *Bunnell v. Waterbury Hospital,* 103 Conn. 520, 524, 131 Atl. 501. It is true that in some cases, of which the *Rooney* case is an example, it has been held as a matter of law that a business visitor has exceeded the bounds of his invitation and has become a mere licensee. *Feinberg v. Strose-Adler Co.,* 3 Conn. Supp. 202, 206; *Liveright v. Max Lifsitz Furniture Co.,* 117

N. J. L. 243, 244, 187 Atl. 583; *Keeran* v. *Spurgeon Mercantile Co.*, 194 Iowa 1240, 1242, 191 N. W. 99. The question was fully discussed and authorities cited in the recent case of *Knapp* v. *Connecticut Theatrical Corporation*, 122 Conn. 413, 416, 417, 190 Atl. 291, and we said, "if a building to which the public is invited has a door leading to a cellar or other dangerous place which is left unfastened and which from its location and appearance may reasonably be mistaken for a door which the public is entitled to use, the owner may be liable to one who mistakenly used it and is injured," and we reached the conclusion that in most cases the determination of this status is a question of fact. This is a case of the latter kind. Girard was clearly an invitee up to the point where he placed the mattress on the platform. *Stratton* v. *Newberry Co.*, 117 Conn. 522, 524, 169 Atl. 56. He could not very well go away and leave it there. To be sure, he could have made inquiries of the clerks in the grocery store but his action in investigating what seemed to him to be a receiving room, particularly in view of the partly open door, does not require us to find error as a matter of law in the conclusion of the trial court that he was still an invitee. The only basis for the claim that the named defendant was not negligent is that her only duty to Girard was that of a landowner to a licensee. With the status of the plaintiff established as that of an invitee, this defense falls. See the *Werebeychick* and *Bunnell* cases, supra, also *Ward* v. *Avery*, 113 Conn. 394, 396, 155 Atl. 502; *Riggs* v. *Pan-American Co.*, 225 Iowa 1051, 1055, 283 N. W. 250; *Gardner* v. *Separator Co.*, 134 Iowa 6, 10, 111 N. W. 316.

The *Knapp*, *Werebeychick* and *Bunnell* cases, supra, are authority for the proposition that the question of contributory negligence under these circumstances

is ordinarily one of fact, and there is nothing in this case to take it out of the general rule. *Carlson* v. *Associated Realty Corporation,* 114 Conn. 699, 703, 159 Atl. 885; *Annunziato* v. *Gu-Ta, Inc.,* 120 Conn. 114, 117, 179 Atl. 651; *McRickard* v. *Flint,* 114 N. Y. 222, 228, 21 N. E. 153; *Tousey* v. *Roberts,* 114 N. Y. 312, 316, 21 N. E. 399; *Fort* v. *Reid Ice Cream Co.,* 98 N. J. L. 559, 561, 119 Atl. 638; *Rhodius* v. *Johnson,* 24 Ind. App. 401, 415, 56 N. E. 942; *Follins* v. *Dill,* 221 Mass. 93, 98, 108 N. E. 929.

With reference to the liability of the Tea Company, Girard claims that it was the lessee of the space occupied by the elevator on the first floor, that the lease provided for the use of the appurtenances, that the Tea Company did actually use the elevator and that its use was essential if the lease of the basement was to be of any practical value. All of these claims were doubtless relevant to the point but none of them were conclusive. Whether the word appurtenances included the elevator was a question of fact and the finding of the trial court that it did not cannot be disturbed. *Whittelsey* v. *Porter,* 82 Conn. 95, 102, 72 Atl. 593. Under the finding, it was at least six months since the Tea Company had made any use whatever of the platform door and the conclusion that the control of the elevator was in the named defendant and not in the Tea Company is supported by the subordinate facts found. In *Olson* v. *Schultz,* 67 Minn. 494, 498, 70 N. W. 779, the test is stated to be: Who had control and possession of the elevator and the machinery necessarily connected with its operation, and the right to make repairs? The machinery was in a penthouse above the third floor, and all repairs and maintenance were handled by the named defendant. Whether the injury was caused by the failure of the doors to operate properly or because an employee of hers left the door

open, the conclusion of the trial court that the Tea Company was not liable cannot be disturbed. See *Murphy* v. *Alpine Press, Inc.*, 291 Mass. 239, 242, 196 N. E. 841. The *Werebeychick* case, supra, and *Staples* v. *Bernabucci*, 119 Conn. 443, 177 Atl. 380, relied on by Girard, are both distinguishable.

There is no error.

In this opinion the other judges concurred.