## ALEXANDER ZADORNESKY
*vs.*
## A. E. PECK

| Court of Common Pleas | District of Waterbury | File No. 7975 |
| --- | --- | --- |

MEMORANDUM FILED JULY 6, 1942.

*A. Henry Weisman*, of Waterbury, for the Plaintiff.

*Morris Tyler,* and *J. Stephen Knight,* of New Haven, for the Defendant.

Memorandum of decision in action by gratuitous licensee for personal injuries.

KLAU, J. On June 24, 1939, and for some years prior thereto, the defendant, a middle-aged unmarried woman, was the owner of a tract of land in the rural district of the Town of Cheshire upon which was located a residence and a barn. The size and appearance of the barn is well depicted in photographs offered as exhibits by the defendant.

The premises had been used many years before as a farm by the defendant's father, when he was alive, but the defendant herself, who is employed in New Haven, used the house only as a summer residence. She made no use of the barn and had not entered it or inspected its interior for a period of at least 25 years. She did not farm the tract of land, but near the residence maintained a flower garden for her own enjoyment.

Some years prior to June 24, 1939, the owners of a neighboring farm, John Johnowitz and Henry Siwinsky, asked the defendant's permission to cut, for their own use, the hay which grew upon the land adjacent to the residence and in the front and the rear of the barn. The defendant, at that time, granted them such permission. They gave her no consideration for the privilege of cutting the hay nor did she ask them for any. She herself had no use for the hay and the only possible advantage which might accrue to her from the cutting of the hay was that it might improve the landscape surrounding the house. She regarded the granting of the privilege as a neighborly act upon her part, as both Johnowitz and Siwinsky operated a farm and needed the hay for their own stock.

At about the time the defendant gave this privilege to Johnowitz and Siwinsky they informed her that they did not have sufficient barn space on their own farm to store the hay, that they intended to build a barn of their own, and requested that in the meantime the defendant permit them to store the hay in her barn. Since she was making no use of the barn and as an act of neighborly kindness the defendant agreed that they might store the hay which they cut upon her premises in her barn.

Annually thereafter the defendant extended the same privileges to Johnowitz and Siwinsky, who, with the help of their children and other employees, cut the hay on the defendant's premises and stored it in the haymows of the defendant's barn.

It cannot be found to be a fact that the storage of the hay by Johnowitz and Siwinsky in the defendant's barn was in consideration of, or the consideration for, their undertaking to cut the hay on the defendant's premises. The storage of the hay in the defendant's barn was entirely for their own benefit and no benefit whatever, either directly or indirectly, accrued thereby to the defendant. The defendant might have sold the hay to others but preferred to permit Johnowitz and Siwinsky to continue to cut the hay.

On June 24, 1939, the plaintiff, an elderly man over 60 years of age, was in the employ of Johnowitz and Siwinsky as a farm laborer, and had been working on their farm. On the day in question, he was brought to the defendant's premises and was raking and gathering hay in the fields, loading it upon a truck which was being operated by one of Johnowitz's sons. Two or three other employees of Johnowitz and Siwinsky were also on the premises engaged in a similar task. After the truck had been loaded, Johnowitz directed the plaintiff to follow him into another field, but the plaintiff followed the truck which was being driven into the barn, with the intention of helping to unload it. The entrance to the haymows of the barn is by way of a large door. The truck drove onto the floor of the barn in the space between the haymows, and the employees who had been riding in the truck began to pitch the load from the truck into the haymow located to the left of one entering the barn. Each mow is set off by a wooden partition about three feet in height and extending from the edge of the door to the opposite wall. The inner side of the partition slopes at an angle of 45 degrees to the floor of the mow. Immediately adjacent to the inner side of the partition, to the left of one entering the barn and in the corner formed between the outer wall of the barn and the inner wall of the partition, there was either a large hole in the flooring, approximately 12 inches wide and five feet long, caused by the collapse of the floor planking at that point or, at the time the accident occurred, of which the plaintiff complains, the flooring at that point was rotted and decayed because of its age or the action of rain and snow falling upon it

through cracks and openings in the outer wall of the barn.

At the time the plaintiff entered the barn a covering of hay had already been spread over the floor of the mow covering that portion of the floor previously described. The plaintiff entered the barn from the left of one looking toward the entrance from the outside, saw the hay being tossed into the mow, and desiring to help in spreading it, placed one foot over the inner side of the partition and then drew his other foot over the other intending to step down upon the floor of the mow. As soon as his feet reached floor level, he fell directly into a cow stall below, a distance of about six feet, suffering a compressed fracture of the twelfth dorsal vertebrae. He was moved to the hospital, placed in a cast in which he remained for several months and at the present time is suffering from a permanent disability arising from a back injury.

The factual situation has been recited at great length because of its importance in determining both the status which the plaintiff occupied with respect to the defendant and the duty which the defendant owed to him under the circumstances. The fundamental question to be determined is whether the plaintiff was on the premises as an invitee or licensee. "The distinction is important because a landowner owes the duty to an invitee to use reasonable care to keep his premises reasonably safe for his use. *Werebeychick* v. *Morris Land & Development Co., Inc.*, 108 Conn. 226, 229, 142 Atl. 739. A licensee, on the other hand, must take the premises as he finds them. *Rooney* v. *Woolworth*, 74 Conn. 720, 723, 52 Atl. 411; *Bunnell* v. *Waterbury Hospital*, 103 Conn. 520, 524, 131 Atl. 501." *Girard vs. Kabatznick*, 128 Conn. 520, 524.

It is true that both a licensee and an invitee come upon the premises of a possessor of land with his permission and consent. To that extent the possessor of land knows of their presence on the premises. But the duty which a possessor of land owes to each is not solely dependent upon such knowledge. The duty toward each arises from the interest and advantage which the possessor derives from the presence on his premises of either a licensee or an invitee.

Broadly speaking both the so-called licensee and invitee are licensees. "A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission." *Restatement, Torts*

§330. A licensee thus defined may be classified either as a gra-tuitous licensee or ·as a business visitor and the duty which a possessor of land owes to one who comes upon the premises with his consent is dependent upon the classification in which such person is thus to be placed. A gratuitous licensee in-cludes one whose presence upon the land is solely for the licensee's own purposes, in which the possessor has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general or local custom. *Restatement, Torts* §331. "A possessor of land is subject to liability for bodily harm caused to gratui-tous licensees by a natural or artificial condition thereon if, but only if, he (a) *knows* of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and (b) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condi-tion and the risk involved therein." *Restatement, Torts* §342. (Italics added.)

The reason for this distinction between a possessor's duty to a gratuitous licensee and his duty to a business visitor has been set forth with great clarity in the comment under section 343 of the *Restatement of the Law of Torts*. "There is only one particular in which one who holds his land open for the reception of business visitors is under a greater duty in re-spect to its physical condition than a possessor who holds his land open to the visits of a gratuitous licensee. The possessor has no financial interest in the entry of a gratuitous licensee; and, therefore, such a licensee is entitled to expect nothing more than an honest disclosure of the dangers which are known to the possessor. On the other hand, the visit of a business visitor is or may be financially beneficial to the possessor. Such a visitor is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous condi-tions. As stated in §342, a possessor owes to a bare licensee only the duty to exercise reasonable care to disclose to him dangerous defects which are known to him and are likely to be undiscovered by the licensee. Toward the business visitor, the possessor owes the additional duty to exercise reasonable care to make the land safe for the reception of his visitor or, at the least, to ascertain the actual condition of the land so

that by warning the visitor thereon, he may give the visitor an opportunity to decide intelligently whether or not to accept the invitation or permission."

The decisions of our Supreme Court are in accord with these principles.

"The principle upon which the courts distinguish a case of implied license from one of implied invitation in the technical sense, seems to be this: Speaking generally, where the privilege of user exists for the common interest or mutual advantage of both parties, it will be held to be a case of invitation; but if it exists for the mere pleasure and benefit of the party exercising the privilege, it will be held to be a case of license." *Pomponio vs. N. Y., N. H. & H. R. Co.*, 66 Conn. 528, 537.

With respect to a licensee, our courts have held that a landowner, after the presence of a licensee is known, must use ordinary care to avoid injuring him by a positive act of negligence or a failure of duty which is equivalent to such an act. *Ward vs. Avery*, 113 Conn. 394, 396. *See, also, Pomponio vs. N. Y., N. H. & H. R. Co., supra*, 537; *Pastorello vs. Stone*, 89 id. 286, 289; *Guilford vs. Yale University*, 128 id. 449, 453.

From the evidence it is clear that the defendant had no knowledge of the condition of the floor in the haymow, not having been in the structure for many years. It is also clear that both Johnowitz and Siwinsky were gratuitous licensees, using the barn for their own purposes. In no way was their use connected with the defendant's business, or of any advantage to her. Nor can it be found that their use of the barn was as a result of a contract entered into with the defendant. Indeed, if such a contract as alleged by the plaintiff could be found, the consequences thereof would well be to make Johnowitz and Siwinsky tenants at will of the defendant with control and possession of the barn resting with them and not with the defendant and with the defendant under such circumstances relieved from any liability for maintaining the barn when so occupied in a reasonably safe condition. *See Ziulkowski vs. Kolodziej*, 119 Conn. 230, 232. Nor are the necessary requisites present to establish liability even if the doctrine of *Webel vs. Yale University*, 125 Conn. 515, 522, 523, were to be extended to include an employee of a lessee,

assuming Johnowitz and Siwinsky to have been tenants, since they might easily have remedied or guarded against injury from the defect.

The plaintiff, as an employee of Johnowitz and Siwinsky, was also a gratuitous licensee. *Katsonas vs. Southerland Building & Contracting Co.*, 104 Conn. 54, 64. The defendant committed no affirmative acts of negligence toward the plaintiff, nor was her failure to act, when she had no knowledge of the condition existing in the floor structure of the haymow, the equivalent of a positive act of negligence.

Since the defendant violated no duty which she owed to the plaintiff, the injuries which the plaintiff suffered did not arise from any act of negligence of the defendant. The issues are found for the defendant and judgment may be entered for the defendant to recover her costs.