MAY L. GIBSON *vs.* HARRY HOPPMAN ET AL.

Third Judicial District, Bridgeport, April Term, 1928.
MALTBIE, HAINES, HINMAN, BANKS AND MARVIN, Js.

Argued April 13th—decided November 7th, 1928.

*Charles S. Hamilton,* for the appellant (plaintiff).

*Charles J. Martin,* with whom, on the brief, were *Bernhart Hoffman* and *Walton E. Cronan,* for the appellees (defendants).

MALTBIE, J. The plaintiff was injured by a fall while descending a stairway leading from an apartment, occupied by her parents, located on the third

floor of a building owned by the defendants, to the hall on the second floor. The building contained three separate apartments, one on each floor, each rented by the defendants to a separate family. The negligence alleged was a failure of the defendants to provide a handrail for the stairway in question and to provide for the lighting of the halls and stairways in the building at night. The defendants filed a general denial.

The stairway in question was winding, some of the treads being very narrow at one end and widening out at the other. There was no handrail. At the top of the stairs was a doorway leading into the apartment of plaintiff's parents, and it appeared in evidence that some light came to the stairway through this, but that the plaintiff closed the door after she passed through it. There was also evidence that at the time the injury occurred, after five o'clock on the afternoon of November 4th, the part of the stairway at the turn, where the plaintiff fell, was quite dark. The trial court held that the plaintiff was guilty of contributory negligence as a matter of law.

The elements in the plaintiff's conduct which the defendants claim to have been negligent were the closing of the door between the apartment and the hall after she had passed through it, excluding such light as came from the kitchen, failure to use her hands to guide her in going down the stairs, and her use of the rear stairway, although another stairway was available at the front of the building. It appears, however, at least by permissible inference, that any light coming from the kitchen would not have penetrated to the part of the stairs where the plaintiff fell. She testified that she kept her right arm against the wall to guide her as she passed down the stairs, and when she reached the turn, and two or three steps before she fell, used her hand for the same purpose. There was no evidence

that the front stairs were better lighted or safer than the rear, but it did appear that the rear stairway was customarily used by the plaintiff upon her frequent visits, and by the members of her family residing in the apartment. Even if the rear stairs were more dangerous than the front, the plaintiff was not necessarily bound to choose the other means of exit, or chargeable with contributory negligence in passing down the rear stairs, provided she did so with reasonable care. *Blake* v. *Waterbury,* 105 Conn. 482, 484, 136 Atl. 95; *Lucy* v. *Norwich,* 93 Conn. 545, 549, 106 Atl. 762; *Pesin* v. *Jugovich,* 85 N. J. L. 256, 259, 88 Atl. 1101. The evidence was such that, at least, reasonable men might differ upon the question as to whether the plaintiff was guilty of contributory negligence; therefore its determination should have been left to the jury. *Lampe* v. *Simpson,* 106 Conn. 356, 138 Atl. 141; *Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 526, 131 Atl. 501.

The defendants' building was clearly a "tenement house" within the definition given in §2563 of the General Statutes, and therefore subject to the provisions of Chapter 133 of the General Statutes, including that, in §2567, which provides that "the owner of every tenement house shall provide for the lighting of all public halls at night." Section 2563 defines such a public hall as "a hall, corridor or passageway not within an apartment." The hallway on each of the floors of the defendants' building was, therefore, a "public hall" within this definition, and the above quoted provision regarding lighting was applicable thereto. The evidence was undisputed that the only provisions for lighting these halls was a fixture in each connected with the wiring of the adjoining apartment, controlled by the tenant thereof, and used, if at all, at his option and expense. This was not a compliance with the

statute, which plainly contemplates that the occupants of such tenement houses and others having lawful occasion to traverse the public halls therein shall be safeguarded by light maintained therein by the landlord instead of leaving such lighting dependent upon the will of the tenants of the respective floors. *Agatstein* v. *Stark,* 156 N. Y. Supp. 393, 394; 36 Corpus Juris, 215. The trial court correctly so ruled, but held that there was a lack of evidence that the time when the plaintiff fell was "at night," and this was one of the two grounds upon which a defendants' verdict was directed.

The word "night" is susceptible of various interpretations. In this State, as elsewhere, a burglary has been held to have been committed in the "night" when there was not daylight enough to enable one to discern the features of a man; *State* v. *Morris,* 47 Conn. 179, 182; but that definition, arbitrarily adopted and of itself open to criticism, hardly affords an apt criterion for such a case as this. We cannot fix a definite time after sunset when night shall be deemed to begin, as has been done by legislative Act in a number of States. 5 Words & Phrases (1st Series) p. 4808; 3 Words & Phrases (2d Series) p. 614. One of the accepted definitions of "night" includes within it the period from the termination of daylight in the evening to the earliest dawn the next morning. *State* v. *Bancroft,* 10 N. H. 105; *State* v. *McKnight,* 111 N. C. 690, 692, 16 S. E. 319. The purpose of the statutory requirement we are considering was obviously to safeguard the occupants of tenement houses and others having lawful occasion to traverse the halls and stairways within them and to assure them a safe passage; and as it ordinarily gets dark more quickly within buildings than it does in the open, to attribute to the word "night" as used in this statute the meaning last suggested would

fall far short of accomplishing the purpose of the provision, leaving, as it would, a period of darkness in the evening and another after dawn when the statute would not apply. "Night" has, however, another accepted meaning, and that is, the period from sunset to sunrise the next morning. Century Dictionary; Webster's New International Dictionary. As indicative of the practical necessities of the situation, it is to be noted that, in so far as we have examined the statutes of other States which have similar provisions, we find that the requirements as to light in public halls in tenement houses become effective at sunset. General Laws of Massachusetts, 1921, Vol. 2, p. 1945; Laws of New York, 1923, Chap. 796, p. 1438; Statutes of California, 1923, p. 827; and see Veiller's Model Housing Law (1920 Ed.) §91. Bearing in mind the purpose of the statute, it seems to us that the legislative intent is best effectuated by construing the word "night" as meaning the period which begins at sunset.

The sun set on the day of the accident at 4.30 o'clock, and all the testimony as to the time of the injury placed it after five. If the jury found in accordance with this testimony, it would follow that the injury occurred at a time when, under the statute, the halls in the building ought to have been lighted. There was evidence that when the electric light in the second-story hall was lighted it illuminated to some extent, at least by reflected rays, the part of the stairs involved in the plaintiff's fall. The failure of the defendants to provide a light in that hall, as required by the statute, if the proximate cause of the plaintiff's fall, would be actionable negligence. *Monroe* v. *Hartford Street Ry. Co.*, 76 Conn. 201, 206, 56 Atl. 498; *Schindler* v. *Welz & Zerweck*, 145 App. Div. 532, 130 N. Y. Supp. 344; *Pesin* v. *Jugovich*, 85 N. J. L. 256, 88 Atl. 1101; 1 Tiffany on Landlord & Tenant, p. 635; 36 Corpus Juris,

214. The jury might, upon the evidence, have found that such lack of light did proximately cause the plaintiff's fall and injury. It follows that the court was in error in directing a verdict for the defendants.

As a new trial must be ordered, certain other claims of the plaintiff must be regarded. Her parents occupied the only apartment upon the third floor of the building, and there was no occasion for any other tenant to use the stairway leading to it, except as he might visit them. At the same time, it is clear from the evidence that the stairway formed no part of the tenement rented to the plaintiff's parents, but was retained by the defendant landlords within their exclusive control. They were under a duty to use reasonable care to keep it reasonably safe for the use of the tenants and those having lawful occasion to visit them, including the plaintiff. *Reardon* v. *Shimelman,* 102 Conn. 383, 386, 128 Atl. 705. The plaintiff claims that in this duty is included an obligation, quite apart from the statute we have been discussing, to light the stairway if that was reasonably necessary to the safety of those using it. It is generally stated that negligence cannot ordinarily be predicated upon the failure of a landlord to light the halls and stairways retained in his control, although not very many jurisdictions seem to have adopted the rule. 1 Tiffany on Landlord & Tenant, p. 635; 2 Underhill on Landlord & Tenant, §492; 16 R. C. L. p. 1041. Two reasons are given by the courts so holding; one, that to permit negligence to be based upon a failure in this regard would be to impose too onerous a burden upon landlords; *Capen* v. *Hall,* 21 R. I. 364, 43 Atl. 847; and the other, that tenants take the premises as they find them and cannot complain if they are maintained in the condition in which they were when the tenancy began, and persons coming upon the premises to visit the tenants, or for like

purposes, can have no greater rights. *Blaufarb* v. *Drooker,* 251 Mass. 201, 204, 146 N. E. 242. The first reason can have little weight here and in other States where legislation now requires the public halls in tenement and apartment houses to be lighted at night. Indeed, those statutes may be taken as fairly indicative of the common sense of the community as to the proper party upon whom should fall the burden of providing such lights. As to the second reason, whatever is the situation with reference to a tenant, we held in *Reardon* v. *Shimelman, supra,* that those visiting the premises to call upon him for a proper purpose did not come upon them merely in the exercise of a right or privilege derived from the tenant, but that the landlord owed to them, as persons there at his invitation, a direct obligation to use reasonable care to see that the passageways upon the premises were reasonably safe. In the very jurisdictions which have laid down the general rule that negligence cannot ordinarily be based upon a failure to light halls and stairways, the courts have recognized an exception where, by reason of the method of construction of the building, there is presented a situation "of special danger from unusual construction, or by reason of traps and pitfalls," or, as otherwise expressed, where the passageways would not be reasonably safe in the absence of artificial light. *Capen* v. *Hall,* 21 R. I. 364, 366, 43 Atl. 847; *Truax* v. *Knox,* 175 N. Y. Supp. 772; *Brugher* v. *Buchtenkirch,* 51 N. Y. Supp. 464 (reversed, without passing upon this point, 167 N. Y. 153, 60 N. E. 420); *McGinnis* v. *Keylon,* 135 Wash. 588, 592, 238 Pac. 631; *Marwedel* v. *Cook,* 154 Mass. 235, 28 N. E. 140. With reference to this exception, it may fairly be said that, expressed in its first form, it affords no criterion sufficiently definite in itself, or by relation to recognized standards, for determining when the exceptional case arises; ex-

pressed in the second form, it limits little the application of the accepted definition of the duties of a landlord to use reasonable care to keep such passageways reasonably safe, and surely it is better to have one rule covering all cases than a rule and an exception which, in the last analysis, must amount to much the same thing. To one upon the premises as was the plaintiff, the guest of a tenant, we hold that the rule requiring a landlord to use reasonable care to keep the passageways reserved for the common use of tenants reasonably safe extends to the lighting of these passageways.

Such passageways are not regarded as ways appurtenant to the tenements in the building, with the obligation upon the owner of those tenements to take such steps as are necessary to permit their safe use, but "the landlord is under the responsibility of a general owner of real estate who holds out an invitation to others to enter upon and use his property, and is bound to see that reasonable care is exercised to have the passageways and stairways reasonably fit and safe for the uses which he has invited others to make of them." *Siggins* v. *McGill,* 72 N. J. L. 263, 265, 62 Atl. 411; *Whitcomb* v. *Mason,* 102 Md. 275, 283, 62 Atl. 749; 2 Underhill on Landlord & Tenant, §487; 16 R. C. L. p. 1038. In *Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 525, 131 Atl. 501, we held that it was negligent for the owner of a building containing an assembly hall impliedly to invite a person into a cloak-room adjacent thereto where it maintained an unmarked door to an elevator shaft, with no sign or warning to prevent users of the room from opening it and with no sufficient light in the room to enable them to determine that the door did open into the shaft; and we there stated that the owner of the building owed to his invitee the duty of exercising reasonable care to have the cloak-room reasonably safe for his use. As regards the tenant this

duty has been held to be qualified by the fact that he is deemed to have assumed the risk of the structural condition of the building as it would appear to be to a person of ordinary observation when his tenancy began; *Andrews* v. *Williamson*, 193 Mass. 92, 78 N. E. 737; *Faxon* v. *Butler*, 206 Mass. 500, 92 N. E. 707; and the rule is broadly laid down that the landlord is not obligated to make structural changes to remedy obvious defects. 1 Tiffany on Landlord & Tenant, p. 634; 16 R. C. L. p. 1040. As we have said, persons coming upon the premises to visit a tenant, as did the plaintiff, enter into a direct relationship to the landlord, and there is not, as to them, the same basis for holding that they have assumed the risk of structural defects as in the case of tenants; indeed, it may well be that they have never been upon the premises before the occasion of suffering an injury. Whatever the situation as to tenants, to one upon the premises as was the plaintiff, the landlord owes the same duty as would any other landowner to one whom he has invited to come there, that is, the duty of exercising reasonable care to have the common passageways reasonably safe. Whether the defendants were guilty of a breach of that duty in failing to light the stairway upon which the plaintiff fell, presented an issue of fact for the jury. But the evidence was not such that the jury could reasonably have found that the defendants were guilty of a breach of duty in failing to provide a handrail or that its absence was a proximate cause of the plaintiff's fall; we have, therefore, no need to consider the application of the general principle to the situation created by its absence.

There is error, the judgment is set aside and a new trial ordered.

In this opinion HAINES and MARVIN, Js., concurred.

HINMAN, J. (dissenting). The construction of "at night" as employed in §2567 of the General Statutes as including the entire period from sunset until sunrise is not warranted by the provisions or the reason and purpose of the statute. The conceded purpose is that occupants of tenement houses and those having lawful occasion to traverse the public halls therein shall be safeguarded by lights maintained by the landlord, and is adequately met by the provision of artificial light whenever the natural light which avails, during the day, to illuminate has been so far withdrawn, in consequence of the setting of the sun, that such hall ceases to be lighted to an extent consistent with the safety of those passing through it. To construe "night," as here used, as commencing at such time, would be consistent with the mischief designed to be remedied and sufficient to the purpose to be served. If the legislature had considered practicable an arbitrary designation of the protected period, either from sunset to sunrise, or a specified time after sunset and before sunrise, it would have so provided, as in §41 of Chapter 400 of the Public Acts of 1921. To require artificial light from the astronomic minute of sunset, when and where daylight continues thereafter to illuminate a hall to an extent amply sufficient for the safety of users, is superfluous and unreasonable. In the present case there was no evidence upon which the jury could have found that the condition of natural light in the second-floor hall had so changed by the recession of daylight that artificial light was required to fulfil the practical purposes of the statute. The direction of a defendant's verdict because of lack of evidence that the time when the plaintiff fell was "at night" can be held to be erroneous only by the adoption of a definition which is inadmissible in view of the considerations appropriate to construction of the statute.

There was no evidence that the stairway to the third floor was, as to use, common to all the tenants of the building and those having occasion to visit them, or that exclusive control thereof was retained by the landlords; such evidence and inferences as the record affords point to the contrary—control and exclusive use by the third-floor tenant. Furthermore, our Tenement House Act has specifically prescribed the duty of landlords with respect to lighting, and to hold that failure to provide illumination beyond that required by statute may be made a basis for recovery on the ground of negligence "apart from the statute," is, in effect, imposition of an obligation which the statute has excluded by its specifications.

In this opinion BANKS, J., concurred.