EMMA L'HEUREUX *vs.* JAMES H. HURLEY ET AL.

MALTBIE, C. J., HAINES, BANKS, AVERY and FOSTER, Js.

Argued June 8th—decided August 8th, 1933.

*John B. Harvey,* for the appellants (defendants).

*Harry E. Back* and *Louis A. Woisard,* for the appellee (plaintiff).

FOSTER, J. The plaintiff claims from the defendants damages for injuries received by her in falling

down a flight of stairs used by her in common with others in a building occupied by her as a tenant and owned by the defendants, Hurley and Grant. Before trial the action was withdrawn as to all defendants except Hurley and Grant, against whom the jury rendered a verdict in favor of the plaintiff. From the action of the court in overruling the defendants' motion to set aside the verdict and from certain portions of the charge to the jury, these defendants appeal.

On March 4th, 1931, and since 1920, the defendants were the owners of a three-story building in Willimantic, known as the Bassett Block, facing north on North Main Street and bounded on the west by Railroad Street. Upon the ground floor were stores, one at the southeast corner of the streets occupied by the defendants as a hardware store, one next occupied by others as a clothing store, and one still further east by others as a restaurant. Between the hardware store and the clothing store was a stairway, known as the west stairway, leading to a common, public hallway on the second floor, upon which were rooms occupied as a barber shop, the offices of a dentist, a studio of a photographer and an apartment used by the latter and his wife as their home. A stairway ascended from the hall on the second floor to a common hallway on the third floor, and upon the third floor were rooms all vacant except one occupied by the photographer in his business.

Immediately adjacent to the Bassett Block on the east was a building owned by others, known as the Union Block. What was known as the east stairway ascended from Main Street at the division line between the Bassett Block and the Union Block. Such division line was in about the center of the stairway. The east stairway was used in common by the tenants of the Union Block and by the plaintiff, a tenant of

the Bassett Block, and terminated at a landing, from which, to the left, access was obtained to rooms in the Union Block used for business purposes. Upon the right, as one ascended the east stairway and reached the landing, was a door, upon the further side of which was a short flight of stairs ascending in a westerly direction to a hall, from which access was gained to an apartment, which had been occupied by the plaintiff as her home by a month to month lease for a period of years extending to a time prior to that upon which the defendants acquired ownership of the Bassett Block. The door, upon being opened as one descended the short stairway, swung to the right over the landing and away from the top of the east stairway, and there was attached to it a spring, which caused it to close when released. Over the landing was an electric light fixture, which, when used, illuminated the landing and the east stairway. At the top of the short flight of stairs leading to the plaintiff's apartment was an electric light controlled exclusively by the plaintiff. Upon the east side of the east stairway was a hand rail that terminated at the second step down from the landing and on the west side of the east stairway such a hand rail extended about six inches up beyond the edge of the landing. For several years before the plaintiff was injured the electric light over the first landing was extinguished at six-fifteen p. m. every night, except Saturday night. In the rear of the Bassett Block was an open, unoccupied plot of ground between the rear line of the building and the rear line of the lot, which was used by all of the tenants of the building as a place for the disposal of rubbish. On the evening of Wednesday, March 4th, 1931, at about eight-fifteen o'clock, the plaintiff, in anticipation of a call of a friend, descended from her apartment the short flight of stairs, pushed open the

door at the landing, released her hold upon the door, which swung shut, and groped her way over to the east side of the landing, reaching out with her right hand to find and grasp the hand rail on the east side of the stairs. While so doing, she fell down the stairs and was injured. These facts are admitted or conceded by all of the parties.

Chapter 143 of the General Statutes (§§ 2562 to 2567) deals with tenement and lodging houses. Section 2566 requires that "The owner of each tenement house shall provide for the lighting of all public halls at night." The plaintiff claims that the legal liability for her injuries rests upon the defendants, because they are the owners of a tenement house in which she had her home when she was injured and that, in not properly lighting a public hall and stairway of such building, they were guilty of negligence that was the proximate cause of her injuries. The defendants claim that the building was not a tenement house under the law, and that the absence of light over the first landing at the top of the east stairway was a structural defect that existed at the commencement of the plaintiff's tenancy and that the plaintiff, having knowledge of such defect, assumed the risk of injury that might result to her from it.

Chapter 143 of the General Statutes defines with precision and breadth a "tenement house." It is "any house or building, or portion thereof, which is rented, leased, let or hired out to be occupied, or is arranged or designed to be occupied, or is occupied, as the home or residence of three or more families, living independently of each other, and doing their cooking upon the premises, and having a common right in the halls, stairways or yards." General Statutes, § 2562.

It is true, as emphasized by the defendants, that at the time the plaintiff fell only she and the family

of the photographer occupied the building as their homes. There were, however, vacant rooms on the third floor of the westerly part of the building, and the testimony of several witnesses, as well as personal inspection of the premises by the jury, warranted a finding that the building was arranged and designed to be occupied by three or more families, living independently of each other, and doing their cooking upon the premises. The plaintiff resided in the easterly part of the building, and the stairway down which she fell led to her apartment and not to any other residential apartment. This stairway was, however, outside of the plaintiff's apartment. Our statutes define a "public hall" as "a hall, corridor or passageway not within an apartment." General Statutes, § 2562.

In the case of *Gibson* v. *Hoppman,* 108 Conn. 401, 143 Atl. 635, the building was occupied by three tenants and a hallway leading to the apartment on the top floor, which was occupied by only one tenant, was held to be a public hallway.

The defendants urge that the court erred in charging the jury that there was evidence in the case as to a common right in the yard at the back of the tenement, from which the jury might conclude that the building in question was a tenement house within the statute. A reference to the finding discloses that the plaintiff offered evidence to prove that the yard at the rear of the Bassett Block was for the common use of all of the tenements in the block; and that the defendants offered evidence to prove that the yard was used in common by all of the tenants of the building for dumping purposes; but that the plaintiff's access to the yard was by a back stairway different from that used by the other tenants of the building. The charge of the court must be tested by the finding. If we were to refer to the evidence on this question, it would be

found from the testimony of the plaintiff and one of the defendants appearing in the record that such finding of the court was fully warranted.

Chapter 143 of the statutes defines a yard as follows: "A 'yard' shall mean an open, unoccupied space, on the same lot with a tenement, lodging or boarding house, between the rear line of such house and the rear line of the lot." General Statutes, § 2562. The size of the yard, or the use to which it is put by the tenants, or their means of access to it are immaterial. If the evidence brings the space within the statutory definition of a yard and the yard was used in common by the tenants, then it becomes an element in determining whether the building falls within the statutory definition of a "tenement house." The charge of the court was correct upon this question.

Since the jury might reasonably have found this building to be a tenement house, there remains to be considered the duty owed by the defendants to the plaintiff as to the lighting of the first landing, the lack of which was the proximate cause of the plaintiff's injuries. This duty is fixed by statute. "The owner of each tenement house shall provide for the lighting of all public halls at night." General Statutes, § 2566. Liability of the defendants in this case for failure to perform this duty toward the plaintiff, their tenant, may be escaped, if, under the law, the plaintiff assumed the risk incident to such violation, or if the plaintiff was guilty of contributory negligence that was a proximate cause of her injuries. There is a well defined line of distinction between the principle of "assumption of risk," and that of "contributory negligence." Both may exist in a given case, or one may exist without the presence of the other. *Freedman* v. *Hurwitz,* 116 Conn. 283, 287, 164 Atl. 647. Assumption of risk on the part of a plaintiff exists

where none of the fault for the injury rests with the plaintiff, but where the plaintiff assumes the consequences of injury occurring without his fault—injury occurring through fault of the defendants, fault of a third person, or fault of no one. Contributory negligence exists where some act of the plaintiff was a proximate cause of the injury. "The rule [of assumption of risk] is summaried in the maxim *Volenti non fit injuria. . . .* 'In its widest significance it affirms that one who has invited or assented to an act being done towards him cannot, when he suffers from it, complain of it as a wrong.' " 1 Beven, Negligence (4th Ed.) p. 790. So, here, the defendants claim that, since the plaintiff had resided for several years in the Bassett Block with knowledge that the landing was not lighted after six-fifteen p. m., except on Saturday nights, she by such continued use of the landing, with full knowledge of its unlighted condition at night, had assumed the risk of any injury to herself proximately caused by such lack of light on the landing.

"This principle is one of broad application." 1 Beven, *supra.* It has been held that a tenant is deemed to have assumed the risk of the structural condition of the building as it would appear to a person of ordinary observation when his tenancy began. *Gibson* v. *Hoppman,* 108 Conn. 401, 410, 143 Atl. 635; *Andrews* v. *Williamson,* 193 Mass. 92, 78 N. E. 737; *Faxon* v. *Butler,* 206 Mass. 500, 92 N. E. 707; *Valin* v. *Jewell,* 88 Conn. 151, 90 Atl. 36. "Nor is the principle restricted to cases where there exists a contract relationship between the parties. *Worden* v. *Gore-Meenan Co.,* 83 Conn. 642, 647, 78 Atl. 422; 1 Pollock, Torts (13th Ed.) 170. Under certain circumstances, it may operate in the field of negligence. *Kebbe* v. *Connecticut Co.,* 85 Conn. 641, 645, 84 Atl. 329; *Marks* v. *Dorkin,* 105 Conn. 521, 136 Atl. 83; *Kala-*

*mian* v. *Kalamian,* 107 Conn. 86, 89, 139 Atl. 635; *Miner* v. *Connecticut River R. Co.,* 153 Mass. 398, 403, 26 N. E. 994." *Freedman* v. *Hurwitz,* 116 Conn. 283, 286, 164 Atl. 647.

It seems to be the claim of the defendants that, since the plaintiff rented her premises from month to month, her tenancy began upon the expiration of the last month before she suffered injury. A tenant does not necessarily assume risk of structural defects existing at the time of the commencement of a lease. It is the commencement of the tenancy that determines the time at which such risk is assumed. When a tenant commences his tenancy, it is his duty to observe the structural condition of the tenement he proposes to occupy, and he takes it as he finds it. When the plaintiff commenced her tenancy of this building there was a lighting fixture over the landing, and the landing and stairway were lighted until ten o'clock each night by the defendants after they became the owners of the building, until July, 1928, after which time the light was extinguished at six-fifteen p. m., except on Saturday nights. The lighting fixture was in position at the time the plaintiff was injured. The darkness of the landing and stairway was caused not by a structural defect, not by the absence of structure, but by the failure of the defendants to make use of structure that was present.

The defendants urge that the principle of assumption of risk in a case such as is here presented should be extended beyond mere structural defects—should be extended to all defects of which the person injured had such knowledge that he may be assumed to have waived the obligation of the person responsible for the defect. Such a waiver constitutes a relinquishment of a personal right. One cannot give what one does not possess. One may waive a personal obliga-

tion of another to the one waiving. One cannot waive an obligation owed by another to the public. The obligation of the defendants here in question was a public obligation created by statute and could not be waived by the plaintiff. Moreover, such a waiver in this case must be deduced from an assumption based upon long knowledge and user of the plaintiff and not from express waiver.

In treating of the principle of assumption of risk, as applied to master and servant, we find the following statement of the law: "In a case of this sort, where the State imposes a duty, and annexes a penalty to the violation of it, a presumption is raised that the employer who violates his duty to the State has not discharged his duty to his work people, rather than a presumption that, because a workman continues at work in illegal circumstances, even with knowledge of them, he must be taken to waive their effect upon him; or, to state the matter in another way, criminal negligence on the part of the master is more consistent with a neglect of civil duty to his workman than with the existence of an agreement between master and workman to avoid the obligation of the law. This view is in accordance with the weight of authority. In the earliest case dealing with the fencing clauses of the Factory Act, 1844, Parke B., said: 'Though its main object may have been to afford security to children and young persons, who are more likely to sustain injury than others; yet there is a positive enactment that in all factories within the interpretation clause, when any part of the machinery is used for any manufacturing process it shall be securely fenced; consequently, if any person sustains an injury through the violation of this enactment, he has a right to bring an action.' . . . The reasonable conclusion from these *dicta* is that, where a statutory duty exists, the maxim

*Volenti non fit injuria* is not to be presumed to avail, or, as Wills, J., says in his judgment in *Baddeley* v. *Earl Granville* [L. R. 19 Q. B. D. 423, 426] 'would not apply at all where the injury arose from a direct breach by the defendant of a statutory obligation.' " 1 Beven, Negligence (4th Ed.) pp. 799 and 802.

"A very decided majority of the later cases declare that assumption of risk may not be set up by an employer who has violated his statutory duty." 18 R. C. L. 680, note 16.

In a case where a tenant had occupied an apartment for six months and was injured by a lack of a fire escape required by ordinance, the court said: "The plaintiff did not waive the duty which the defendant owed to him under the ordinance as an occupant of the hotel, nor assume the risks incident to its occupation in its then condition. The duty of the defendant to place the fire escapes upon its hotel was not a contractual obligation, and the doctrine of assumed risks has no application to this case. The ordinance is a police regulation, made for the protection of human life, and in the interest of that portion of the public occupying hotels and lodging houses. Public policy requires that duties of this kind be discharged, and that all consequences of a failure to do so shall follow. The individuals who are affected cannot suspend the law by waiver or express contract. The plaintiff had the right to presume that the defendant would obey the law and would provide the fire escapes, and to continue to occupy his room upon the faith of such presumption." *Adams* v. *Cumberland Inn Co.,* 117 Tenn. 470, 481, 101 S. W. 428.

If this were otherwise, it would be possible for the owner of a tenement house of many apartments to expressly notify his tenants of his intention not to light the public halls and stairways, and, though he

would be liable to penalty in an action by the State, he could thus defeat action by any tenant who, continuing to reside in such tenement for a substantial period of time, suffered injury proximately caused by such act of the landlord.

The court charged the jury that the principle of assumption of risk had no application to this case. Upon the admitted and conceded facts appearing in the finding, this was a correct statement of the law.

Finally, the defendants claim that the court erred in overruling their motion to set aside the verdict on the ground that the plaintiff had failed to prove by a fair preponderance of the evidence that she was free from contributory negligence that was a proximate cause of her injuries. Unless reasoning minds could not reach the conclusion indicated by the verdict, this was a question of fact for the determination of the jury, and the court could not legally set the verdict aside. *Green* v. *Brown,* 100 Conn. 274, 278, 123 Atl. 435; *Canfield* v. *Sheketoff,* 104 Conn. 28, 30, 132 Atl. 401. It is true that as the plaintiff came out of the door she might have held onto the door with her right hand and reached the westerly rail of the stairs with her left hand. There was undisputed evidence that she could not reach the east rail of the stairs without releasing her hold upon the door, which closed by force of the spring attached to it. Moreover, there was evidence that when the door was open the light in the hall leading to the plaintiff's apartment shed little illumination upon the landing and the east stairway. To many people the use of the right hand is not only most natural but most safe and careful. The plaintiff testified, "I always go down to the right and go up to the right. It is as natural for me to do that as to breathe." The plaintiff testified that immediately before she fell she felt her way across the

landing, stopped, faced forward, took hold of the railing and, as she did so, stepped off the top of the stairs and fell. Where one uses a dark stairway, which it is the duty of the owner to light, he is not required to obtain a light or other guidance at his peril. *Burk* v. *Corrado,* 116 Conn. 511, 514, 165 Atl. 682; *Carlson* v. *Associated Realty Corporation,* 114 Conn. 699, 159 Atl. 885; *Werebeychick* v. *Morris Land & Development Co.,* 108 Conn. 226, 142 Atl. 739; *Skladzien* v. *Sutherland Building & Construction Co.,* 101 Conn. 340, 125 Atl. 614. Whether the plaintiff was in the exercise of due care at the time she fell was a question of fact, upon which reasoning minds might differ, and the conclusion that the plaintiff was free from negligence in the premises was one that the mind could reasonably reach.

There is no error.

In this opinion the other judges concurred.